IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COOK INCORPORATED, <br><br> Plaintiff, <br><br> v. <br><br> BOSTON SCIENTIFIC CORPORATION, <br><br> Defendant. | Case No. 01-C-9479 <br><br> Judge Kocoras <br><br> Magistrate Judge Nolan |

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT BOSTON SCIENTIFIC CORPORATION TO PLAINTIFF COOK CORPORATION'S COMPLAINT**

Defendant Boston Scientific Corporation ("BSC"), by its attorneys, answers plaintiff Cook Corporation's ("Cook") Complaint in this action as follows:

1. BSC admits the allegations in paragraph 1.

2. BSC admits the allegations in paragraph 2.

3. BSC admits that the Court has jurisdiction pursuant to 28 U.S.C § 1332 and that complete diversity of citizenship exists. BSC denies, however, that plaintiff has been injured by any act or omission of BSC and, accordingly, denies each and every remaining allegation in paragraph 3.

4. BSC admits that plaintiff purports to bring its action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ("Lanham Act"), but denies that any act or omission of BSC is in violation of that statute or that this action is properly based on alleged violations of that statute, and denies that plaintiff has been injured by any alleged violation of the Lanham Act.

5. BSC admits that plaintiff purports to bring its action under Section 1 of the Sherman Act, 15 U.S.C. § 1 ("Sherman Act"), but denies that any act or omission of BSC is in



violation of that statute or that this action is properly based on alleged violations of that statute, and denies that plaintiff has been injured by any alleged violation of the antitrust laws.

6. BSC admits that the statutes alleged invest jurisdiction in United States District Courts to determine claims arising thereunder, but denies that any act or omission of BSC has been or is in violation of the statutes alleged or that this action is properly based on alleged violations of such statutes; denies that plaintiff has standing to maintain this action pursuant to such statutes; and, accordingly, denies each and every remaining allegation of paragraph 6 of plaintiff's Complaint. In addition, under Section 11 of the Angiotech License Agreement, the parties have agreed that the laws of the State of Washington shall govern.

7. BSC admits the allegations in paragraph 7.

8. BSC admits the allegations in paragraph 8.

9. BSC admits that Section 2.1(b) of the Angiotech Agreement speaks to Angiotech's grant of a license to certain technology to Cook, and Section 2.1(a) speaks to Angiotech's grant to BSC. The terms and scope of the license, however, have not been fully alleged herein. Thus, BSC denies the allegations in paragraph 9 to the extent they do not accurately and completely state the scope of Angiotech's license to Cook and BSC.

10. BSC admits that Angiotech Technology generally refers to the matters alleged. The relevant terms and scope of the license, however, have not been fully alleged herein. Thus, BSC denies the allegations in paragraph 10 to the extent they do not accurately and completely state the scope of Angiotech's license to Cook and BSC.

11. BSC admits that the Angiotech License grants Cook certain rights to use the Angiotech Technology, however, those rights are subject to various limitations as well as obligations that have not been alleged herein. Thus, BSC denies the allegations in paragraph 11 to the extent they do not accurately and completely state the scope of the Angiotech License as it relates to Cook.

12. BSC is without sufficient knowledge or information to admit or deny the allegations in paragraph 12.

13. BSC admits the allegations in paragraph 13.

14. BSC admits that it issued a press release, but denies the remaining allegations of paragraph 14.

15. BSC denies each and every allegation in paragraph 15.

16. BSC incorporates its answers to paragraphs 1 through 15 as if fully set forth herein.

17. BSC admits that plaintiff purports to assert a claim for declaratory and injunctive relief, but denies the remaining allegations contained in paragraph 17.

18. BSC incorporates its answers to paragraphs 1 through 17 as if fully set forth herein.

19. BSC incorporates and re-alleges paragraph 14 of its Answer, and denies the remaining allegations in paragraph 19.

20. BSC denies each and every allegation in paragraph 20.

21. BSC denies each and every allegation in paragraph 21.

22. BSC denies each and every allegation in paragraph 22.

23. BSC denies each and every allegation in paragraph 23.

24. BSC denies each and every allegation in paragraph 24.

25. BSC denies each and every allegation in paragraph 25.

26. BSC denies each and every allegation in paragraph 26.

27. BSC denies each and every allegation in paragraph 27.

28. BSC denies each and every allegation in paragraph 28.

29. BSC incorporates its answers to paragraphs 1 through 28 as if fully set forth herein.

30. BSC denies each and every allegation in paragraph 30.

31. BSC denies each and every allegation in paragraph 31.

32. BSC admits that plaintiff purports to bring this action under 15 U.S.C. § 4, but denies that any such claim has arisen against BSC, and, accordingly, denies the remaining allegations contained in paragraph 32.

33. BSC denies each and every allegation in paragraph 33.

## AFFIRMATIVE DEFENSES

In further answer to the Complaint, BSC alleges the following affirmative defenses:

### First Defense

The Complaint fails to state any cause of action for which relief may be granted.

### Second Defense

Plaintiff has failed to plead and cannot establish the elements required for injunctive relief.

### Third Defense

BSC's actions were fully justified and privileged as a matter of law and, therefore, give rise to no claims against plaintiff.

### Fourth Defense

Certain of Plaintiff's claims are barred by the *Noerr-Pennington* doctrine.

### Fifth Defense

Plaintiff lacks standing to bring certain of these claims.

### Sixth Defense

Plaintiff's claims are barred by the doctrine of equitable estoppel.

### Seventh Defense

Plaintiff has not suffered any cognizable antitrust injury.

### Eighth Defense

Plaintiff has not been legally harmed in any way by any action of BSC.

## PRAYER FOR RELIEF

WHEREFORE, having answered plaintiff's Complaint, BSC prays that the Court: (a) enter judgment in favor of BSC and dismiss the Complaint with prejudice; (b) deny plaintiffs' prayer for relief in its entirety; (c) award BSC its costs and expenses incurred in the defense of this action; and (d) grant BSC such other and further relief as is just and proper.

## COUNTERCLAIMS OF DEFENDANT BOSTON SCIENTIFIC CORPORATION

Defendant Boston Scientific Corporation ("BSC"), by its attorneys, counterclaims against plaintiff Cook Corporation ("Cook"), and for its causes of action alleges and states as follows:

### THE NATURE OF THE COUNTERCLAIMS

1. This demand arises out of Cook's breach of a July 9, 1997 agreement between and among BSC, Cook, and Angiotech Pharmaceuticals ("Angiotech") whereby Angiotech granted to BSC an exclusive, non-sublicensable license to make, use, have made, distribute and sell devices incorporating Angiotech's patented technology ("the Angiotech Agreement"), subject to the co-exclusive rights of Cook thereunder.

2. On August 20, 2001, Cook publicly announced that it had entered into a development and distribution agreement with Guidant Corporation ("Guidant"), permitting Guidant to distribute and sell devices incorporating the Angiotech technology.

3. Cook's agreement with Guidant, as publicly described, constitutes an actual and anticipatory breach of the Angiotech Agreement.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332(a)(1), in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and complete diversity of citizenship exists between the parties.

5. This Court also has supplemental jurisdiction over the instant matter under 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(a) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this district.

7. This Court is authorized to enter a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. as there exists an actual controversy between BSC and Cook.

## PARTIES

8. BSC is a corporation organized and existing under the laws of Delaware, having its principal place of business in Natick, Massachusetts.

9. Cook is an Indiana corporation with its principal place of business in Indiana.

## FACTS

### BACKGROUND

10. This suit involves devices used in surgical procedures for the treatment of atherosclerosis, which occurs when the inner walls of arteries thicken and narrow due to a build-up of cholesterol and other elements carried in the blood. These deposits result in diminished blood flow through the artery.

11. Balloon angioplasty is a procedure designed to open these narrowings, or "stenoses," through the inflation of a tiny balloon mounted to the end of a long catheter. In such a procedure, the catheter is advanced through the affected artery until the balloon can be placed across a stenosis. The balloon is then inflated, which should compress and crack the stenosis, stretch the artery, and restore normal blood flow. In some cases, however, stenoses reappear in a treated artery in the months following an angioplasty procedure.

12. "Stent systems," typically in which expandable tubes are crimped onto the balloon portion of an angioplasty catheter, are sometimes used to address this "restenosis." When the balloon with a stent is inflated at the stenosis, the stent expands and holds open the stenosis. The stent then remains expanded in the artery to maintain the free flow of blood after the balloon is deflated and the catheter removed.

13. While stent systems have improved restenosis rates, they have not eliminated restenosis entirely.

14. Many in the medical community are now investigating whether restenosis rates can be lessened, or even eliminated, if stents are coated with a variety of drugs developed to treat artery disease locally.

15. Paclitaxel, a well-known anti-cancer drug, is one such drug.

16. On information and belief, Angiotech is a privately held Canadian pharmaceutical company engaged in the development and commercialization of novel treatments for chronic inflammatory and angiogenesis-dependant diseases such as arthritis, restenosis, cancer and psoriasis.

17. On information and belief, Angiotech has developed its own technologies, as well as licensed related technologies of others, for coating stents with paclitaxel.

18. At this time, however, paclitaxel is in the investigative stage for such an application. The United States Food & Drug Administration has not yet been asked to approve this use and, as a result, paclitaxel-coated stent systems will not be commercially available until 2003 in the United States.

19. BSC and Cook, *inter alia*, manufacture, distribute and sell coronary angioplasty catheters and stent systems.

**ANGIOTECH'S EXCLUSIVE LICENSE AGREEMENT WITH BSC AND COOK**

20. On July 9, 1997, Angiotech entered into an agreement with BSC and Cook whereby Angiotech granted to BSC and Cook the co-exclusive, non-sublicenseable license to make, use, have made, distribute and sell devices incorporating Angiotech's patented technology, paclitaxel and related compounds, for use as coatings for stents and other endoluminal devices.

21. Under § 2.1 of the Angiotech Agreement, the licenses Angiotech granted to Cook and BSC were identical, subject to the other's rights:

> In consideration for the execution, delivery and performance of the Investment Documentation and the assumption by Cook of its payment and other obligations hereunder and subject to all the other terms and conditions of this license, Angiotech hereby grants to Cook an exclusive (subject only to the rights granted to BSC and reserved to Angtiotech pursuant to paragraphs (a) above and (c) below . . .) worldwide right and license to use, manufacturer, have manufactured, distribute and sell, and to grant sublicenses to its Affiliates to use, manufacture, have manufactured, distribute and sell, the Angiotech Technology in the Licensed Field of Use solely for use in the Licensed Applications (the "Cook License").

22. In exploiting Angiotech's technology, BSC and Cook are each responsible for obtaining all regulatory approvals for their respective products and conducting clinical studies, pursuant to § 6.2 of the Angiotech Agreement.

23. As discussed in § 7.3 of the Angiotech Agreement, Cook contracted to "take all commercially reasonable actions necessary to perform all of [its] respective obligations under the License[] and remain in compliance with any conditions of such License[]."

24. Section 11.7 of the Angiotech Agreement did not allow Cook to assign it's rights and obligations, except under certain circumstances:

> Except with respect to any sublicenses granted by BSC or Cook pursuant to Section 2.1, <u>no party may assign its rights or obligations hereunder without the prior written consent of the other parties</u>, which consent shall not be unreasonably withheld in the case of any assignment pursuant to a merger, consolidation or sale of substantially all of the assets or stock . . .

25. Section 11.17 of the Angiotech Agreement states that the "parties agree that they have participated equally in the formation" of the contract.

## COOK'S AGREEMENT WITH GUIDANT

26. Despite the specific prohibitions in the Angiotech Agreement, on August 20, 2001, Cook publicly announced that it had entered into a development and distribution agreement with Guidant (the "Guidant Deal"), whereby Guidant would distribute and sell Cook's devices that had incorporated Angiotech's paclitaxel technology.

27. On information and belief, the Guidant Deal is structured as follows: (1) Guidant will manufacture balloon catheters and stents for Cook and ship the devices to Cook; (2) Cook

- 8 -

will in turn coat the stents with paclitaxel and package them; (3) Cook will ship the packaged devices to Guidant; and (4) Guidant will be the exclusive distributor of the devices to customers.

28. The Guidant Deal also provides that Guidant would obtain regulatory approval for their use on behalf of Cook and manage the clinical trials.

29. The Guidant Deal breaches the Angiotech Agreement because, *inter alia,* the Guidant Deal: (1) constitutes an unauthorized *de facto* sublicense to Guidant of the Angiotech technology; (2) improperly grants distribution rights to Guidant, a party unaffiliated with Cook; and (3) improperly authorizes Guidant to seek regulatory approval for the devices.

## FIRST COUNTERCLAIM
### (Breach of Contract)

30. BSC incorporates and re-alleges the allegations of paragraphs 1 through 29 of its Counterclaims as though fully set forth herein.

31. This is a Counterclaim for breach of contract against Cook which seeks relief with a value in excess of $75,000, exclusive of interest and costs.

32. The Angiotech Agreement is a valid written contract among BSC, Cook, and Angiotech.

33. BSC has fully performed its obligations under the Angiotech Agreement, is not in default on any of its obligations thereunder, and has complied with all conditions precedent.

34. Cook has breached the Angiotech Agreement by failing to comply with one or more of the provisions, including, but not limited to, sections 6.2, 7.3 and 11.7.

35. The actions and omissions of Cook in contracting with Guidant to be the manufacturer and exclusive distributor of paclitaxel-coated stents, to conduct Cook's clinical trials and to seek regulatory approval on Cook's behalf, constitute a material breach of one or more provisions of the Angiotech Agreement, including, but not limited to, sections 2.1, 6.2, 7.3 and 11.7.

36. Cook breached section 2.1 of the Angiotech Agreement by contracting with Guidant for it to be the exclusive distributor of paclitaxel coated stents.

37. Cook breached section 6.2 of the Angiotech Agreement by impermissibly permitting Guidant to manage clinical trials and regulatory submissions on Cook's behalf.

38. Cook failed to "take all commercially reasonable actions necessary to perform all of [its] respective obligations under the Licenses and remain in compliance with any conditions of such licenses," as prescribed under section 7.3, when it impermissibly delegated its rights and obligations under the Angiotech Agreement to Guidant.

39. Cook breached section 11.7 of the Angiotech Agreement when it impermissibly assigned its aforementioned rights and obligations under the Angiotech Agreement to Guidant. In particular, Cook granted an unauthorized *de facto* sublicense to Guidant of the Angiotech technology.

40. Cook's actions constitute a willful, material breach of the Angiotech Agreement.

41. BSC has been irreparably injured as a result of Cook's material breaches of the Angiotech Agreement. BSC has also been damaged in an amount which has not been fully determined at this time, but which will be proven at the time of trial.

## SECOND COUNTERCLAIM
### (Breach of Covenant of Good Faith and Fair Dealing)

42. BSC incorporates and re-alleges the allegations of paragraphs 1 through 41 of its Counterclaims as though fully set forth herein.

43. This is a Counterclaim for Breach of Covenant of Good Faith and Fair Dealing against Cook that seeks relief with a value in excess of $75,000.00, exclusive of interest and costs.

44. The Angiotech Agreement was a valid written contract between BSC, Cook, and Angiotech.

45. BSC has fully performed its duties under the Angiotech Agreement, was not in default on any of its obligations thereunder, and complied with all conditions precedent.

46. In performing its obligations under the Angiotech Agreement, Cook owed BSC a duty of good faith and fair dealing.

47. By its actions described above, Cook breached its covenant of good faith and fair dealing by taking actions destructive of BSC's right to enjoy the benefits of the Angiotech Agreement, and by acting in bad faith.

48. Cook breached the covenant of good faith and fair dealing by entering into the Guidant Deal in that the Guidant Deal deprives BSC of the benefits of the Angiotech Agreement. In doing so, Cook acted in a manner inconsistent with the reasonable expectations of the parties, and for improper motives.

49. BSC has been irreparably injured as a result of Cook's breach of the covenant of good faith and fair dealing. BSC has also been damaged in an amount which has not been fully determined at this time, but which will be proven at the time of trial.

WHEREFORE, BSC requests judgment against Cook as follows:

(a) that the Court find and declare that Cook has breached the Angiotech Agreement by failing to comply with one or more of provisions thereof, including sections 2.1, 6.2, 7.3, and 11.7 and in particular, by entering into and implementing the Guidant Deal;

(b) that the Court find and declare that Cook breached the covenant of good faith and fair dealing by entering into and implementing the Guidant Deal;

(c) that the Court enjoin Cook from implementing the Guidant Deal or otherwise breaching the Angiotech Agreement;

(d) that the Court award BSC its damages caused by Cook's breaches of the Angiotech Agreement, including Cook's breach of the covenant of good faith and fair dealing;

(e) that the Court award BSC its reasonable costs and attorneys fees incurred in this action; and

(f) that he Court award such other and further relief as the Court deems just and proper.

Respectfully submitted,

*[signature]*

Michael P. Padden
Michael K. Lindsey
HOWREY SIMON ARNOLD
    & WHITE, LLP.
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 595-1239

Robert Ruyak
HOWREY SIMON ARNOLD
    & WHITE, LLP.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 783-0800

Dated: December 26, 2001

*Attorneys for Defendant-Counterclaimant*
BOSTON SCIENTIFIC CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS OF DEFENDANT BOSTON SCIENTIFIC CORPORATION TO PLAINTIFF COOK CORPORATION'S COMPLAINT was served by facsimile and United States mail, first-class postage prepaid, this 26th day of December, 2001 upon each of the parties listed below:

>Ronald Wilder
>Frederick J. Sperling
>John A. Bannon
>Shiff Hardin & Waite
>6600 Sears Tower
>Chicago, IL 60606
>(312) 258-5500
>(312) 258-5700 (Fax)
>
>_____
>Michael K. Lindsey