U.S. DISTRICT COURT
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

JAN 1 6 2002

```
                                          )
COOK INCORPORATED,                        )
                                          )
           Plaintiff,                     )    Case No. 01-C-9479
                                          )
        v.                                )    Judge Kocoras
                                          )
BOSTON SCIENTIFIC CORPORATION,            )
                                          )    Magistrate Judge Nolan
           Defendant.                     )
                                          )
```

**NOTICE OF MOTION**

FILED

DEC 2 6 2001

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

To:    Ronald Wilder
       Frederick J. Sperling
       John A. Bannon
       Shiff Hardin & Waite
       6600 Sears Tower
       Chicago, IL  60606

**PLEASE TAKE NOTICE** that on Tuesday, January 15, 2002 at 9:45 am, or as soon

thereafter as counsel may be heard, we shall appear before Judge Kocoras in the courtroom

usually occupied by him, or before any other judge who may be sitting in his place, and shall

present the attached "**MOTION OF DEFENDANT BOSTON SCIENTIFIC**

**CORPORATION TO DISMISS COUNTS II AND III OF THE COMPLAINT**" and

"**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT BOSTON**

**SCIENTIFIC CORPORATION TO DISMISS COUNTS II AND III OF THE**

**COMPLAINT**".

You are invited to attend.

*Michael P. Padden*

Michael P. Padden ARDC No. 6183992
Michael K. Lindsey ARDC No. 6272616
HOWREY SIMON ARNOLD
& WHITE, LLP
321 N. Clark Street
Suite 800
Chicago, Illinois 60610
(312) 595-1239
(312) 595-2250 (fax)

Dated: December 26, 2001

*Attorneys for Defendant-Counterclaimant*
BOSTON SCIENTIFIC CORPORATION

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COOK INCORPORATED, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BOSTON SCIENTIFIC CORPORATION, | ) |
| Defendant. | ) |

DOCKETED

JAN 1 6 2002

Case No. 01-CV-9479

Judge Kocoras

Magistrate Judge Nolan

FILED

DEC 2 6 2001

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## MOTION OF DEFENDANT BOSTON SCIENTIFIC CORPORATION
## TO DISMISS COUNTS II AND III OF THE COMPLAINT

Defendant and counterclaimant Boston Scientific Corporation ("BSC") respectfully

submits this Motion to Dismiss Counts II and III of the Complaint of plaintiff and

counterdefendant Cook Incorporated ("Cook"). BSC submits herewith a Memorandum in

Support of this Motion.

When adjudicating a motion to dismiss pursuant to Rule 12(b)(6), a court may consider

the allegations in the Complaint as well as "[d]ocuments incorporated by reference into the

pleadings and documents attached to the pleadings as exhibits . . . ." *Dynamic Force v. Dynamic

Force, Ltd.*, No. 98 C 5922, 1999 U.S. Dist. LEXIS 7892, at *9 (N.D. Ill. May 14, 1999). Upon

such a review, a court may determine that a plaintiff has "plead himself out of court by alleging

facts that establish the defendant is entitled to prevail." *Williams v. Chicago Transit Authority*,

No. 01 C 1870, 2001 WL 855421, at *1 (N.D. Ill. July 27, 2001). Here, the Complaint and

attachments thereto establish that Cook cannot prevail on Counts II and III of its Complaint.

Cook's allegation in Count II of its Complaint that BSC has violated the Lanham Act by

issuing a Press Release is insufficient as a matter of law. (Complaint ¶¶ 18-28.) Indeed, Count

II fails to state a claim under the Lanham Act for five independent reasons: (1) Cook does not

allege – and cannot establish – that there has been a false or misleading statement of fact; (2) the

Press Release is not "commercial advertising or promotion" as required by the Lanham Act; (3) the Press Release cannot affect interstate commerce because neither Cook nor BSC is commercializing a paclitaxel-coated stent; (4) Cook fails to allege that BSC's statements caused it damage; and (5) the Press Release is immune from Lanham Act liability under the *Noerr-Pennington* doctrine.

Count III of Cook's Complaint, alleging that BSC's Notice Letter and Press Release amount to a "conspiracy" in restraint of trade in violation Section 1 of the Sherman Act, also plainly fails to state a claim upon which relief can be granted. In particular, Cook fails to state a viable Section 1 claim because: (1) BSC's allegedly unlawful activities enjoyed antitrust immunity; (2) Cook acknowledges that there has been no agreement between Cook and BSC; (3) the Complaint fails to define a relevant antitrust market; and (4) the Complaint fails to proffer an adequate allegation of antitrust injury.

For the foregoing reasons, and based upon the Memorandum submitted herewith, BSC respectfully requests that the Court dismiss Counts II and III of Cook's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

Michael P. Padden
Michael K. Lindsey
HOWREY SIMON ARNOLD
& WHITE, LLP.
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 595-1239

Robert Ruyak
HOWREY SIMON ARNOLD
& WHITE, LLP.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 783-0800

Dated: December 26, 2001

*Attorneys for Defendant-Counterclaimant*
BOSTON SCIENTIFIC CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **MOTION OF DEFENDANT BOSTON SCIENTIFIC CORPORATION TO DISMISS COUNTS II AND III OF THE COMPLAINT** was served by facsimile and regular United States mail, first class postage prepaid, this 26th day of December, 2001, upon each of the parties listed below:

> Ronald Wilder
> Frederick J. Sperling
> John A. Bannon
> Shiff Hardin & Waite
> 6600 Sears Tower
> Chicago, IL 60606
> (312) 258-5500
> (312) 258-5700 (fax)

Michael K. Lindsey



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COOK INCORPORATED,          )
                            )
        Plaintiff,          )        Case No. 01-CV-9479
                            )
    v.                      )        Judge Kocoras
                            )
BOSTON SCIENTIFIC CORPORATION,  )    Magistrate Judge Nolan
                            )
        Defendant.          )
                            )

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION OF DEFENDANT BOSTON SCIENTIFIC CORPORATION
## TO DISMISS COUNTS II AND III OF THE COMPLAINT

Defendant and counterclaimant Boston Scientific Corporation ("BSC") respectfully submits this Memorandum in Support of its Motion to Dismiss Counts II and III of the Complaint of plaintiff and counterdefendant Cook Incorporated ("Cook").

This suit arises from a relatively narrow dispute over the terms of an intellectual property license granted by Angiotech Pharmaceuticals, Inc. to BSC and Cook (the "Angiotech Agreement"). As BSC will show, Cook assigned certain rights under the Angiotech Agreement to a third party medical device company in contravention of unambiguous language in the contract precluding such a transfer. While Count I of Cook's Complaint seeks adjudication of that dispute, Counts II and III constitute a transparent and legally insupportable effort to shift the Court's focus away from the actual language of the Angiotech Agreement. Because BSC's enforcement of its contractual rights does not violate either the Lanham Act or the Sherman Act, Counts II and III should thus be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

**The Technology At Issue**. This suit involves devices used in procedures to treat atherosclerosis, a condition in which deposits narrowing the inner walls of arteries, called

"stenoses," diminish blood flow to nearby tissue. In balloon angioplasty, a tiny balloon mounted to the end of a long catheter is used to treat such stenoses. The catheter is advanced through the affected artery until the balloon can be placed across a stenosis. The balloon is then inflated to compress and crack the stenosis, stretch the artery, and restore normal blood flow.

In some cases, stenoses reappear in the treated artery in the months following an angioplasty procedure. "Stent systems," which typically include expandable tubes crimped onto the balloon portion of an angioplasty catheter, are sometimes used to address this "restenosis." When the balloon with a stent is inflated at the stenosis, the stent expands and holds open the stenosis. The stent then remains expanded in the artery to maintain the free flow of blood after the balloon is deflated and the catheter removed. While stent systems have improved restenosis rates, they have not eliminated restenosis entirely.

Trials are now underway to determine whether restenosis rates can be lessened, or even eliminated, by coating stents with a variety of drugs developed to treat artery disease locally. To that end, Angiotech has developed its own technologies, and licensed related technologies of others, for coating stents with paclitaxel, an anti-cancer drug that may be effective in combating restenosis. (Complaint ¶ 10.) At this time, however, paclitaxel is in the investigational stage (*id.* ¶ 11) and the United States Food & Drug Administration has not yet been asked to approve this application. As a result, paclitaxel-coated stents will not be commercially available in the United States until 2003.

**The Angiotech Agreement And the Present Dispute**. The Angiotech Agreement, which was executed in July 1997, co-exclusively licensed to BSC and Cook certain of Angiotech's rights in paclitaxel-coated stent technology. (Complaint ¶¶ 9-11, Ex. A.) The agreement granted BSC an exclusive "worldwide right and license to use, manufacture, have manufactured, distribute, and sell" products embodying Angiotech's technology, subject only to Cook's co-extensive rights. (Complaint Ex. A § 2.1(a).) Neither party may assign any of their rights to an unaffiliated entity absent written consent. (*Id.* § 11.7.) In exploiting this technology,

BSC and Cook are each "responsible for obtaining all regulatory approvals for their respective" products. (*Id.* § 6.2.)

In August 2001, Cook entered into the agreement with Guidant Corporation (the "Guidant Deal") at the center of this dispute. (Complaint ¶ 12.) As described in Cook's Complaint and in its public statements, the Guidant Deal is structured as follows: (1) Guidant will manufacture balloon catheters and stents for Cook and ship the devices to Cook; (2) Cook will in turn coat the stents with paclitaxel and package them; (3) Cook will ship the packaged devices to Guidant; and (4) Guidant will be the exclusive distributor of the devices to customers. (*Id.* ¶ 12, Ex. B.) The Guidant Deal also provides that Guidant "would obtain regulatory approval for their use on behalf of Cook." (Complaint ¶ 12.) As BSC will show, the Guidant Deal breaches the Angiotech Agreement because, *inter alia,* the Guidant Deal: (1) constitutes an unauthorized *de facto* sublicense to Guidant of the Angiotech technology; (2) improperly grants distribution rights to Guidant, a party unaffiliated with Cook; and (3) improperly authorizes Guidant to seek regulatory approval for the devices.

Pursuant to § 10.1 of the Angiotech Agreement, BSC notified Cook on September 10, 2001, of its belief that the Guidant Deal breached the Angiotech Agreement and of its intent to arbitrate the dispute (the "Notice Letter"). (Complaint Ex. B.)[1] The following morning, BSC issued a press release outlining the substance of the notice of dispute delivered to Cook (the "Press Release"). (Complaint, Ex. C.) One month later, BSC initiated arbitration of its dispute with Cook pursuant to § 10.2 of the Angiotech Agreement. (Complaint Ex. A.) Cook and Guidant responded by filing a Complaint in the United States District Court for the Southern District of Indiana seeking, *inter alia,* to enjoin the arbitration and a declaration that the Guidant Deal did not violate the Angiotech Agreement. The parties thereafter conditionally resolved their dispute as to the appropriate forum by agreeing that Cook and BSC would litigate their dispute in this Court pursuant to a stipulated proposed scheduling order.

---

[1]   Sections 10.1 and 10.2 of the Angiotech Agreement require such notification as a prerequisite to the initiation of arbitration. (Complaint, Ex. A..)

## ARGUMENT

When adjudicating a motion to dismiss pursuant to Rule 12(b)(6), a court may consider the allegations in the Complaint as well as "[d]ocuments incorporated by reference into the pleadings and documents attached to the pleadings as exhibits . . . ." *Dynamic Force v. Dynamic Force, Ltd.*, No. 98 C 5922, 1999 U.S. Dist. LEXIS 7892, at *9 (N.D. Ill. May 14, 1999). Upon such a review, a court may determine that a plaintiff has "plead himself out of court by alleging facts that establish the defendant is entitled to prevail." *Williams v. Chicago Transit Authority*, No. 01 C 1870, 2001 WL 855421, at *1 (N.D. Ill. July 27, 2001). Here, the Complaint and attachments thereto establish that Cook cannot prevail on Counts II and III of its Complaint.

## I.    COUNT II (LANHAM ACT) SHOULD BE DISMISSED

Cook's allegation that BSC has violated the Lanham Act by issuing the Press Release is insufficient as a matter of law. (Complaint ¶¶ 18-28.) Indeed, Count II fails to state a claim under the Lanham Act for five independent reasons: (1) Cook does not allege – and cannot establish – that there has been a false or misleading statement of fact; (2) the Press Release is not "commercial advertising or promotion" as required by the Lanham Act; (3) the Press Release cannot affect interstate commerce because neither Cook nor BSC is commercializing a paclitaxel-coated stent; (4) Cook fails to allege that BSC's statements caused it damage; and (5) the Press Release is immune from Lanham Act liability under the *Noerr-Pennington* doctrine.

### A.    There Has Been No False Or Misleading Statement Of Fact

The Press Release did not violate the Lanham Act because it was not a statement of fact, false or otherwise. Cook's Complaint quotes the statement from the Press Release that is alleged to be violative of § 43(a) of the Lanham Act:

> Any arrangement between Cook and Guidant which results in Guidant selling paclitaxel-coated stents is, in our opinion, clearly in violation of the letter and spirit of the co-exclusive license agreement and is totally inconsistent with all discussions and negotiations leading up to its signing. We will aggressively protect our co-exclusive rights under this agreement

(Complaint ¶ 14, Ex. C.) Section 43(a), however, applies only to "false or misleading description *of fact*, or false or misleading representation *of fact*. . . ." 15 U.S.C. § 1125(a) (emphasis added). It is well settled that statements of opinion are not actionable under the Lanham Act. *See, e.g., Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000) ("Essential to any claim under section 43(a) of the Lanham Act is a determination of whether the challenged statement is one of fact – actionable under section 43(a) – or one of general opinion – not actionable under section 43(a)"); *Dial-A-Car, Inc. v. Transportation, Inc. et al*, 884 F. Supp. 584, 592 (D.D.C. 1995) ("To survive a motion to dismiss or for judgment on the pleadings on a Lanham Act claim, a plaintiff must allege that defendants made statements of fact . . ."). BSC expressly describes its statements in the Press Release as "*our opinion*" of the Guidant Deal. (Complaint Ex. C (emphasis added).) Such a statement could not possibly be construed as a statement of fact and, indeed, Cook does not even plead that the Press Release contains *any* statements of fact. Rather, the Complaint merely recites that BSC has made a "false statement." (Complaint ¶¶ 19-26.) Because the disputed statement in the Press Release is explicitly one of opinion, and not of fact, dismissal of Count II is mandated.

Further, the Press Release refers to BSC's opinion about an unresolved issue of law. (Complaint Ex. C.) Lanham Act claims based on such inherently unverifiable statements are routinely dismissed. For example, in *Global Discount Travel Services, LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701 (S.D.N.Y. 1997), the plaintiff alleged that defendant had violated the Lanham Act "by intentionally and falsely claiming . . . that its competitor, Global, does not have the right under the Ticket Agreement to sell System Tickets . . . ." *Id.* at 706. The court dismissed the claim, holding:

> Here, a court has not ruled on the contractual provisions of the Ticket Agreement, and a genuine issue of fact exists as to the meaning of the Ticket Agreement. In this context, Global's attempt to characterize TWA's assertions as "false statements of fact" is "simply using the Lanham Act to try and enforce its preferred interpretation" of the Ticket Agreement. In the absence of a clear and unambiguous determination of the contractual rights and liabilities of the parties under the Ticket Agreement, at worst, defendant's statements simply expressed an

opinion – not a false statement – about the legal effect of its contracts. Until the legal question regarding the interpretation of the Ticket Agreement is resolved, TWA's statements are incapable of being proved false.

*Id.* at 706-07 (internal citations and footnotes omitted); *see Gillette Co. v. Norelco Consumer Products Co.*, 946 F. Supp. 115, 137 (D. Mass. 1996) ("the lesson to be drawn from [Supreme Court precedent] is that capacity for verification is the most important question in determining whether a statement is one of fact").[2]

In this case, Cook can allege only that BSC expressed its opinion about an unresolved question of law. Such a statement cannot constitute a false statement of fact because "to say that [defendant's conduct] is or is not illegal is simply not yet true." *Universal City Studios, Inc. v. Sony Corp. of America*, 429 F. Supp. 407, 410 (C.D. Cal. 1977); *see also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) ("Absent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact"). Because BSC has made no statements of fact, Count II of Cook's Complaint should be dismissed.

### B.    The Press Release Was Not Commercial Advertising Or Promotion

Cook also fails to allege, as required by the Lanham Act, that BSC made any false statements "in commercial advertising or promotion."[3] *See* 15 U.S.C § 1125(a). On its face, the Press Release is not a "commercial advertisement or promotion" as contemplated the Act. *See,*

---

2    Similarly, in *Dial-A-Car*, the plaintiff alleged that defendants falsely represented that its taxicabs "could lawfully be used to provide the same Corporate Account Services as [plaintiff] provides." *Dial-A-Car*, 884 F. Supp. at 591-92. In dismissing the Lanham Act claim, the court stated that, because the legality of defendants' provision of taxicab services had not yet been adjudicated, "the Court cannot say that defendants' statements that their services are legal were verifiably false representations of fact. . . . [A]ll that can be said is that defendants were expressing an opinion on an inconclusive question of law and were not making representations of verifiable or 'hard definable facts.'" *Id.*

3    In this regard, the complaint states only that "the BSC press release constitutes a commercial advertisement." (Complaint ¶ 20.) This is a "[b]are legal conclusion" entitled to no deference on a motion to dismiss. *Daley v. Provena Hospitals*, 88 F. Supp. 2d 881, 885 (N.D. Ill. 2000) ("Bare legal conclusions attached to narrated facts will not suffice").

e.g., *Porous Media Corp. v. Pall Corp.*, 201 F.3d 1058, 1059 (8th Cir. 2000) (a press release describing a lawsuit "did not constitute a 'commercial advertisement or promotion' as required by the Lanham Act"). Count II of the Complaint should be dismissed on this ground alone.

### C. The Press Release Was Not Used In Commerce

Count II must also be dismissed because Cook cannot allege that the Press Release had a "substantial impact on interstate commerce." *PS Promotions, Inc. v. Stern*, No. 97 C 3742, 2000 U.S. Dist. LEXIS 3075, at *27 (N.D. Ill. Mar. 8, 2000). This Court has held that, to withstand a motion to dismiss, "a plaintiff must allege facts sufficient to support some kind of interstate connection." *Ace Novelty Co. v. Vijuk Equipment, Inc.*, No. 90 C 3116, 1990 U.S. Dist. LEXIS 11525, at *15 (N.D. Ill. 1990); *see id.* at *16 ("Advertising that affects interstate commerce and solicitation of sales across state lines or between citizens of the United States and citizens and subjects of a foreign nation is . . . commerce within the meaning of the Lanham Act").

Where a statement relates to a product not sold in interstate commerce, the statement has not been "used in commerce" under the Lanham Act. In *Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761, 765 (Fed. Cir. 1990), the Federal Circuit held that "[b]ecause Lang's complaint did not, and could not until the ship was completed, allege that the ship had entered into commerce, the district court correctly dismissed Count IV for failure to state a claim under the Lanham Act." *See also CogniTest Corp. v. Riverside Publishing Co.*, No. 94 C 4741, 1995 U.S. Dist. LEXIS 8721, at *7 (N.D. Ill. Jun. 22, 1995) ("no use in commerce connection where false advertising related to ship's hull that was still nine months from completion"); *Automated Marine Propulsion Sys. v. Aalborg Ciserv Int'l*, 859 F. Supp. 263, 267 n.2 (S.D. Tex. 1994) ("Section 43(a) claim is premature when filed before completion of construction of the allegedly offending article").

In this case, Cook fails to plead facts "sufficient to support some kind of interstate connection" because Cook cannot allege that any products under the Angiotech Agreement are sold by anybody anywhere. (Complaint ¶¶ 18-28.) In fact, since neither BSC nor Cook sells any

products under that agreement, Cook could not allege that the Press Release actually affected any commerce. Because Cook does not – and cannot – allege that the Press Release substantially affected interstate commerce, Cook's Lanham Act claim should be dismissed.

### D. Cook Does Not Allege Damages Caused By The Press Release

Cook's Lanham Act claim should be dismissed because it fails to plead adequately any facts in support of a claim that it has been or is likely to be damaged. The Lanham Act requires the plaintiff to plead damages as an element of its prima facie case. *See* 15 U.S.C. § 1125(a) ("shall be liable in a civil action by any person who believes that he or she is or is likely to be *damaged* by such act") (emphasis added); *United States ex rel. Lightron of Cornwall v. Broadway Constr.*, No. 97 C 8284, 1998 U.S. Dist. LEXIS 7554 (N.D. Ill. Apr. 28, 1998) (dismissing Lanham Act claim where plaintiff failed to plead facts that showed any damages).

In its complaint, Cook makes the single statement that it is "likely to be injured as a result of BSC's false statements by diversion of sales of its paclitaxil-coated stents from Cook (and Guidant) to BSC . . . [and] by a loss of goodwill associated with [those] products and its products generally." Such a conclusory statement, without any factual support, does not adequately allege damages sufficient to withstand a motion to dismiss. *Lightron of Cornwall*, 1998 U.S. Dist. LEXIS 7554, at *20. In *Lightron of Cornwall*, this Court dismissed a Lanham Act claim where the plaintiff had made "conclusory statements that it has been damaged by [defendant's] letter without providing any facts in support." *Id.* The Court further stated that, "[i]f money damages are sought, the plaintiff must demonstrate actual reliance by the consumer on the misleading statements." *Id.* (citing *Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 206 (7th Cir. 1982)).

Cook is unable to allege adequately any damages or likelihood of damages because neither Cook nor BSC sells any paclitaxil-coated stent products. Cook does not – and cannot – allege that either Cook or BSC has made *any* sales of paclitaxil-coated stents anywhere. Cook cannot allege actual or likely diversion of consumers or loss of goodwill as a result of the Press Release because there are simply no consumers – the products are awaiting FDA approval and

have not yet been made public. Because Cook cannot sufficiently allege damages or the likelihood of damages, its Lanham Act claim must be dismissed.

###### E.    The Press Release Is Immune Under The *Noerr-Pennington* Doctrine

The Press Release is entitled to *Noerr-Pennington* immunity. As this Court recently held:

> The *Noerr-Pennington* doctrine provides immunity from liability arising out of the filing and maintaining of a civil lawsuit, so long as the litigation is not a sham. . . . Most courts to consider the issue have extended *Noerr-Pennington* immunity to shield non-judicial acts that are reasonably and normally attendant upon protected litigation.

*Alexander Binzel Corp. v. Nu-Tecsys Corp.*, No. 91 C 2092, 2000 U.S. Dist. LEXIS 5238, at *10-11 (N.D. Ill. Mar. 23, 2000). The Court further held that *Noerr-Pennington* immunity should be extended to "attendant publicity" as long as the party: (1) "has probable cause to threaten litigation"; and (2) "makes no assertions beyond the legal and factual bases [of the suit]." *Id.* at *11. In this case, BSC's threatened arbitration was not a sham and Cook has not alleged otherwise. Nor can or does Cook allege that the Press Release makes any assertions beyond the legal and factual bases of the threatened arbitration. (Complaint Ex. C.) Indeed, the sole purpose of the Press Release was to relate those factual and legal bases to the public. Accordingly, Count II must be dismissed.

### II.    COUNT III (SHERMAN ACT) SHOULD BE DISMISSED

Count III of Cook's Complaint, alleging that BSC's Notice Letter and Press Release amount to a "conspiracy" in restraint of trade in violation Section 1 of the Sherman Act, also plainly fails to state a claim upon which relief can be granted. In particular, Cook fails to state a viable Section 1 claim because: (1) BSC's allegedly unlawful activities enjoyed antitrust immunity; (2) Cook acknowledges that there has been no agreement between Cook and BSC; (3) the Complaint fails to define a relevant antitrust market; and (4) the Complaint fails to proffer an adequate allegation of antitrust injury. Such deficiencies in pleading are fatal to a Section 1 claim: "The pleader may not evade these requirements by merely alleging a bare legal

conclusion; if the facts 'do not at least outline or adumbrate' a violation of the Sherman Act, the plaintiffs 'will get nowhere merely by dressing them up in the language of antitrust.'" *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984). Dismissal of a complaint is thus required where, as here, a complaint on its face fails to state a claim under the antitrust laws. *Id.* at 1110.

### A.   BSC'S Letter and Press Release Are Immune from Antitrust Liability

The *Noerr-Pennington* doctrine also bars Cook's antitrust claim. Section 10.1 of the Angiotech Agreement *required* BSC to send the Notice Letter prior to initiating arbitration. (Complaint Exs. A, B.) The Press Release simply reported that BSC had a dispute with Cook and had initiated a dispute resolution procedure. (Complaint Ex. C.) The Sherman Act simply does not prohibit such activities. On the contrary, it is well established that litigation, and commensurate pre-litigation communications, are immune from antitrust liability under *Noerr-Pennington. See, e.g., Thermos Co. v. Igloo Products Corp.*, No. 93 C 5826, 1995 U.S. Dist. LEXIS 14221, at *4 (N.D. Ill. Sept. 27, 1995), *adopted by* No. 93 C 5826, 1995 U.S. Dist. LEXIS 18382 (N.D. Ill. Dec. 12, 1995). In *Thermos*, a trademark licensee sent "pre-litigation policing letters" asking defendant to cease its infringing activities and filed a lawsuit after defendant failed to do so. *Id.* Defendant counterclaimed, alleging that the licensee's actions violated the Sherman Act. The Court dismissed the counterclaims, noting:

> It would be absurd to hold that it (*Noerr-Pennington*) does not protect those acts reasonably and normally attendant upon effective litigation. The litigator should not be protected only when he strikes without warning. If litigation is in good faith, a token of that sincerity is a warning that it will be commenced and a possible effort to compromise the dispute.

*Id.* at *12 (citations omitted); *see also Aircapital Cablevision, Inc. v. Starlink Communications Group*, 634 F. Supp. 316, 325-26 (D. Kan. 1986) (*Noerr-Pennington* immunized press releases publicizing the lawsuit and required dismissal). Cook's antitrust claim, which is based solely on immunized conduct, must fail.

### B.    Cook Fails to Allege Concerted Action

Dismissal of Count III is mandated because Cook alleges only unilateral conduct by BSC – *i.e.*, its issuance of the Notice Letter and Press Release. Indeed, Cook makes it plain that it *disagrees* with BSC and *denies* that the Guidant Deal violates the Angiotech Agreement. (Complaint ¶ 17.) A Section 1 plaintiff, however, must allege "joint conduct or concerted action; independent action is not proscribed." *Brown v. Visa U.S.A., Inc.*, 674 F. Supp. 249, 251 (N.D. Ill. 1987) (Rule 12(b)(6) dismissal for failure to allege an illegal conspiracy or anticompetitive harm) (citing *Copperweld Corp. v. Independent Tube Corp.*, 467 U.S. 752 (1984)). Indeed, it is common sense that, "[i]n order for a conspiracy to exist, at least two parties must agree to act in concert." *Brown,* 674 F. Supp. at 251. *See, e.g., Brown*, 674 F. Supp. at 252 (complaint is defective when no contract, combination or conspiracy is sufficiently alleged); *American Academy of Disability Evaluating Physicians Ass'n. v. American Disability Evaluation Research Inst.*, No. 90 C 6038, 1991 U.S. Dist. LEXIS 9305, at *27-28 (N.D. Ill. July 8, 1991) (dismissing complaint for failure to allege existence of a conspiracy in restraint of trade).

Cook's attempts to sustain its claim by asserting that it seeks to prevent a prospective conspiracy – that "if successful," BSC's actions will, at some later date, somehow "coerce" Cook into an unlawful agreement (Complaint ¶ 31) – are nonsense. If BSC is successful in its suit challenging Cook's use of Guidant as a distributor, Cook's termination of Guidant will result not from any agreement with BSC, but from its unilateral decision to abide by a court ruling that the Guidant Deal breached the Angiotech Agreement. Because Cook has not alleged any actual or prospective agreement – let alone one that violates Section 1 – its claim must be dismissed.[4]

---

[4]    Even if Cook characterizes the Notice Letter and Press Release as potentially harassing or coercive, such unilateral acts would not violate the Sherman Act. *See Isaksen v. Vermont Castings, Inc.*, 825 F.2d 1158, 1162 (7th Cir. 1987) ("Harassment by itself, however, would not violate section 1 of the Sherman Act, a section that punishes only contracts, combinations, and conspiracies in restraint of trade and thus requires concerted action; harassment is unilateral"); *Vinci v. Waste Management, Inc.*, No. C 94-1946 FMS, 1994 U.S. Dist. LEXIS 12071, at *19 (N.D. Cal. Aug. 19, 1994) ("encouragement" to conspire is not a Section 1 agreement), *aff'd*, 80 F.3d 1372 (9th Cir. 1996).

### C. Cook Failed To Plead A Sufficient Relevant Product Market

Cook's conclusory claim that it participates in a "market for paclitaxel-coated stents in the United States and worldwide" (Complaint ¶ 30) is insufficient as a matter of law. Cook acknowledges that other products, including standard angioplasty and procedures involving uncoated stents, are *currently* used for the same purpose that drug-coated stents will be used for when they are introduced for sale, *i.e.* the treatment of stenoses. (Complaint ¶ 11.) Moreover, paclitaxel-coated stents are just one type of potential drug-coated stents. Cook does not allege any facts sufficient to establish that paclitaxel-coated stents are a relevant product market distinct from the many other competing products that are – or will be – used to treat stenoses.

A Section 1 claimant must "allege a relevant geographic and product market in which trade was unreasonably restrained. . . ." *Floors-N-More, Inc. v. Freight Liquidators*, 142 F. Supp. 2d 496, 500 (S.D.N.Y. 2001) (Rule 12(b)(6) dismissal for failure to allege relevant market and unreasonable restraint of trade) (citations omitted). When a "plaintiff fails to define its proposed relevant market . . . a motion to dismiss may be granted." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997); *see also Elliott v. United Center,* 126 F.3d 1003, 1004-05 (7th Cir. 1997) (affirming dismissal of antitrust claim for failure to define a proper relevant market).

Cook's failure to allege facts establishing that paclitaxel-coated stents are a relevant antitrust market is, by itself, fatal to Count III. "Merely asserting that a commodity is in some way unique is insufficient to plead a relevant market. Rather, an antitrust complaint must explain why the market it alleges is the relevant, economically significant product market." *B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F. Supp 162, 171 (S.D.N.Y. 1995).[5] *See, e.g., Tower Air, Inc. v. Federal Express Corp.*, 956 F. Supp. 270, 280 (E.D.N.Y. 1996) ("Because a relevant market includes all products that are reasonably interchangeable, plaintiff's

---

[5] In *B.V. Optische*, the court dismissed an antitrust claim for the same failing that Cook's Complaint has here: it alleged a "market" comprised only of the plaintiff's own product and failed to refer to other, reasonably interchangeable alternative products. *Id.* at 172.

failure to define its market by reference to the rule of reasonable interchangeability is, standing alone, valid grounds for dismissal") (citation omitted).

### D. Cook Failed To Plead Antitrust Injury

Finally, a plaintiff must allege that the defendant caused antitrust injury. *Brown,* 674 F. Supp. at 252. Antitrust injury requires a two-part allegation, and failure to allege either part requires dismissal. *First,* a plaintiff must allege that defendant's acts have or will injure competition or consumer welfare. *See Schuylkill Energy Resources, Inc. v. Penn. Power & Light Co.,* No. 95-4885, 1996 U.S. Dist. LEXIS 7165, at *10 (E.D. Pa. May 20, 1996) (injuries to an individual competitor, without allegations of injury to competition or consumer welfare, are insufficient as a matter of law) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477 (1977)). *Second,* plaintiff must allege that it suffered "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Brown,* 674 F. Supp. at 253 (citations omitted). Cook alleges neither.

As to the former requirement, Cook's Complaint contains only a conclusory charge that BSC's breach of contract suit "if successful" will restrain competition. Other allegations in the Complaint, however, make it plain that no harm to competition could result from a court finding that the Guidant Deal breached the Angiotech Agreement. At most, BSC's breach of contract counterclaims might require Cook to distribute its paclitaxel-coated stents directly or through an affiliated distributor. (Complaint ¶ 30.) Cook does not allege how its own decision – in the face of a court ruling – to terminate Guidant and sell through some other means would harm competition and, as a matter of law, it would not. *See Car Carriers,* 745 F.2d at 1109 (affirming dismissal of group boycott claim where parties entered into an agreement that resulted in the elimination of a supplier). Indeed, it is well-established that termination of a distributor rarely has anticompetitive effects. *See Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 678 F.2d 742, 745 (7th Cir. 1982) (affirming dismissal of § 1 claim because antitrust laws do not forbid distributor termination in order to be a more effective competitor, even if it results in less price

competition among remaining distributors); *Paddock Publications v. Chicago Tribune Co.,* No. 93 C 7493, 1994 U.S. Dist. LEXIS 13696, *35 (N.D. Ill. Sept. 26, 1994) ("As long as there is effective interbrand competition, how a manufacturer chooses to organize its distribution is not a concern of the Sherman Act"), *aff'd,* 103 F.3d 42 (7th Cir. 1996).

Moreover, Cook has not properly alleged that it suffered injury flowing from any anticompetitive conduct. Cook does not and cannot allege that BSC's conduct forecloses it from bringing paclitaxel-coated stents to the market or that a distribution agreement with Guidant is essential to its ability to compete. Cook has not requested monetary damages as compensation for wrongs already suffered, nor requested a preliminary injunction to stave off any imminent injury. (*See* Complaint ¶¶ 32, 33.) Instead, it only asks for a permanent injunction to prevent BSC from "persuading, coercing, and forcing" it to refuse to deal with Guidant, *i.e.* from succeeding in its lawsuit. (Complaint ¶¶ 30-33.) In order to obtain a permanent injunction, however, Cook must allege (and prove) a "*significant threat* of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 130 (1969). Cook does not and cannot allege any significant threat of injury from an impending violation of the antitrust laws: by its own admission, it will suffer harm only if BSC is successful in challenging its right to use Guidant as its distributor at the end of this judicial process. Cook, likewise, does not allege any anticompetitive act that will continue to cause it harm or that will recur without an injunction. Cook's hypothetical injury to competition is too remote and speculative to survive a motion to dismiss. *See O'Neill v. Coca-Cola,* 669 F. Supp. 217 (N.D. Ill. 1987) (plaintiff seeking injunctive relief failed to show a threatened antitrust injury proximately caused by conduct constituting antitrust violation); *Brown,* 674 F. Supp. at 252 (allegations as to a hypothetical anticompetitive effect are not enough); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 790 F. Supp. 804, 825 (C.D. Ill. 1992) (injuries too remote when plaintiff's product does not even yet compete in defendants' market), *aff'd,* 998 F.2d 391 (7th Cir. 1993).

14

## CONCLUSION

For the foregoing reasons, BSC respectfully requests that the Court dismiss Counts II and III of Cook's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

Michael P. Padden
Michael K. Lindsey
HOWREY SIMON ARNOLD
    & WHITE, LLP.
321 North Clark Street, Suite 800
Chicago, Illinois 60610
(312) 595-1239

Robert Ruyak
HOWREY SIMON ARNOLD
    & WHITE, LLP.
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 783-0800

Dated: December 26, 2001

*Attorneys for Defendant-Counterclaimant*
BOSTON SCIENTIFIC CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT BOSTON SCIENTIFIC CORPORATION TO DISMISS COUNTS II AND III OF THE COMPLAINT** was served by facsimile and regular United States mail, first class postage prepaid, this 26th day of December, 2001, upon each of the parties listed below:

> Ronald Wilder
> Frederick J. Sperling
> John A. Bannon
> Shiff Hardin & Waite
> 6600 Sears Tower
> Chicago, IL 60606
> (312) 258-5500
> (312) 258-5700 (Fax)

Michael K. Lindsey