Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9479 | **DATE** | 2/28/2002 |
| **CASE TITLE** | Cook Inc. vs. Boston Scientific Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Motion (Doc 8-1) to dismiss one counterclaim is granted, and motion (Doc 11-1) to dismiss portions of the complaint is granted in part and denied in part. We dismiss Count II of Cook's complaint and Boston's second counterclaim. Boston's motion to dismiss Count III is denied. Plaintiff is given leave to file its motion for summary judgment on the contract claim by March 21, 2002. Defendant's answer and cross-motion for summary judgment is due April 11, 2002. Plaintiff's reply and answer to the cross-claim due May 2, 2002. Defendant's reply due May 16, 2002. All briefs are limited to 15 pages. Ruling set for June 6, 2002 at 9:45 a.m.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | 3/1/02 |
| | Notified counsel by telephone. | | date docketed |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT | 28 |
| | Mail AO 450 form. | | docketing deputy initials |
| ✓ | Copy to Magistrate Judge Nolan. | 02 FEB 28 PM 3:26 | |
| | SCT courtroom deputy's initials | FILED-CD 10 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COOK INCORPORATED, )
)
Plaintiff, )
)
vs. ) 01 C 9479
)
BOSTON SCIENTIFIC CORPORATION, )
)
Defendant. )

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the Defendant Boston Scientific Corporation's motion to dismiss certain counts of the complaint as well as Plaintiff Cook Incorporated's motion to dismiss one counterclaim. For the reasons set forth below, the motion to dismiss the counterclaim is granted; the motion to dismiss portions of the complaint is granted in part and denied in part.

**BACKGROUND**

Arteriosclerosis, or narrowing of the arteries, is a common and serious medical condition. One method of treatment involves an expandable mesh tube called a stent, which is inserted into a diseased artery and enlarged to increase arterial flow capacity. Recently, a Canadian corporation called Angiotech patented an invention that allows

stents to be coated with medication to further increase the treatment potential of implanted stents.

Rather than producing and marketing the stents itself, Angiotech granted coexclusive licenses in the underlying technology to Plaintiff Cook Incorporated ("Cook") and Defendant Boston Scientific Corporation ("Boston"). Both licenses were embodied in a single agreement ("the Angiotech agreement"). The agreement grants worldwide coexclusive rights to Cook and Boston to "use, manufacture, have manufactured, distribute and sell, and to grant sublicenses to its Affiliates to use, manufacture, have manufactured, distribute and sell, the Angiotech Technology...." Each licensee is responsible for obtaining necessary regulatory approval for the products they produce that use the Angiotech technology. In addition, none of the parties could assign their rights or obligations under the agreement without the prior written consent of the others.

After entering the agreement with Angiotech, Cook then contracted with another party, Guidant, to perform certain tasks during the production of the stents, including obtaining regulatory approval for and selling the finished product. Upon learning of Cook's arrangement with Guidant, Boston sent a notice letter to Cook of its belief that the Cook-Guidant association breached certain provisions of the Angiotech licensing agreement. The following day, Boston issued a press release that contained a quote from its CEO regarding the company's belief that Cook's arrangement with Guidant

violated the terms of the agreement and expressing Boston's intention to "aggressively protect" its rights in the face of the perceived breach.

Cook filed suit, seeking a declaratory judgment that they are not in breach of the Angiotech Agreement, as well as asserting violations of both the Sherman Act and the Lanham Act based on the notice letter and the press release. Boston answered the complaint and asserted two counterclaims, one for breach of contract and one for breach of the implied covenant of good faith and fair dealing.

The parties now each move to dismiss portions of the other's case pursuant to Fed. R. Civ. Proc. 12(b)(6): the Sherman Act and Lanham Act counts and the counterclaim involving the covenant of good faith.

## LEGAL STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. Triad Associates, Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989). In ruling on a motion to dismiss, the court must construe the allegations of the complaint in the light most favorable to the plaintiff, and all well-pleaded facts and allegations in the complaint must be accepted as true. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993).

The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46

(1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. Lucien v. Preiner, 967 F.2d 1166, 1168 (7th Cir. 1992).

In reviewing a Rule 12(b)(6) motion, the court may not look outside the allegations in the pleadings, but documents incorporated by reference into the pleadings and documents attached to the pleadings as exhibits are considered part of the pleadings for all purposes. See Fed.R.Civ.P. 10(c); Venture Associates Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993). With these principles in mind, we turn to the parties' motions.

## DISCUSSION

### I. Lanham Act Claim

Cook's first contested claim alleges that Boston's press release violates 15 U.S.C. § 1125(a), which prohibits any person from making false statements regarding the goods, services, or commercial activities of another. Subsection (a) proscribes a wide range of activities; the language of Cook's complaint mixes and matches many of these terms. A close reading of the statute reveals that Cook's allegations implicate only one of the scenarios described: a person may not make a false or misleading representation of fact in commercial advertising or promotion that "misrepresents the nature...of...another person's...commercial activities." 15 U.S.C. § 1125(a)(1)(B). According to Cook, the press release fits this bill.

-4-

As an initial matter, we note that Boston invokes the Noerr-Pennington doctrine to counter Cook's Lanham Act claim. The doctrine immunizes parties who seek government action from antitrust liability. United Mine Workers v. Pennington, 381 U.S. 657 (1965) (executive branch); Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) (legislative branch). However, the rationale behind the holdings in both Noerr and Pennington rested heavily on interpretation of the Sherman Act. Although the actions Boston took could conceivably fall under other umbrellas, such as the First Amendment right to petition, Boston asserts only Noerr-Pennington immunity. See California Motor Transport Co. v. Trucking Unlimited, 92 S.Ct. 609 (1972) (holding that the First Amended provides immunity for activities related to Clayton Act litigation); Cardtoons v. Major League Baseball Players Assoc., 208 F.3d 885, 888-91 (10th Cir. 2000) (comparing right to petition under First Amendment with Noerr-Pennington immunity). Because Count II arises not under the Sherman Act but under the Lanham Act, these cases and their reasoning are inapposite, and we will not use them to bar Cook's Lanham Act claim.

We therefore examine whether Count II alleges all the required elements of a claim under § 1125(a). To properly make out its claim, Cook must allege that (1) Boston made a false or misleading statement of fact in a commercial promotion about Cook's commercial activities, (2) the statement tends to deceive a substantial segment of the audience, (3) the deception is likely to influence the purchasing decision,

(4) Boston put the false statement into interstate commerce, and (5) Cook is likely to be injured as a result of the false statement, even if the injury is only a loss of goodwill associated with its products. Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 819 (7th Cir. 1999). The language of paragraphs 20 through 24 of the complaint tracks each of the latter four elements. Although the statements are admittedly somewhat sparse, they are enough to put Boston on notice of the nature of the claim against it. See, e.g., Kaplan v. Shure Bros, Inc., 266 F.3d 598, 607 (7th Cir. 2001). As such, the allegations with regard to these four elements are sufficient to survive a motion to dismiss. Id.

The first element, however, does not have the proper underpinning. The language of the press release, even taken in the light most favorable to Cook, is not a statement of fact. Rather, it states the basis of Boston's opinion that it was entitled to pursue contractual and legal remedies available under the Angiotech agreement and the intent of that company to seek relief through those avenues. This does not state any facts pertaining to Cook's activities with Guidant. A claim that alleges facts undermining the plaintiff's right to relief cannot survive a 12(b)(6) motion. See, e.g., Pernice v. Chicago, 237 F.3d 783, 784-85 (7th Cir. 2001); Bennett v. Schmidt, 153 F.3d 516, 519 (7th Cir. 1998). The statements contained within the press release contradict Cook's assertion that Boston made the requisite statement of fact. Without this element, Count II cannot withstand Boston's motion to dismiss.

## II. Sherman Act Claim

Section 1 of the Sherman Act states, in pertinent part, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce...is hereby declared to be illegal." 15 U.S.C. § 1. Commercial arrangements prohibited by this section can occur as vertical restraints (i.e., between parties at different levels of the distribution chain) or horizontal restraints (i.e., between parties at the same level of the distribution chain). Toys 'R' Us, Inc. v. FTC, 221 F.3d 928, 930 (7th Cir. 2000). To properly plead a cause of action under this section, Cook must allege a contract, combination, or conspiracy; an unreasonable restraint of trade within the relevant market; and injury. Denny's Marina, Inc. v. Renfro Productions, Inc., 8 F.3d 1217, 1220 (7th Cir. 1993). The thrust of Cook's argument is that if the Angiotech agreement means what Boston says it does, it constitutes a horizontal restraint of trade because it allows Boston to prevent them from working with Guidant in the production of the coated stents. Of course, if Cook eventually succeeds in advancing this argument, they could invalidate their own license to the Angiotech technology, but they are entitled to pursue the argument if they wish. CVD, Inc. v. Raytheon Co., 769 F.2d 842, 856 (1st Cir. 1985).

Boston frames its motion as if Cook were basing Count III only on the notice letter and press release. However, Cook unequivocally states that Count III is "based solely on [Boston's] impermissible construction of the Angiotech agreement." Cook,

- 7 -

as the author and master of its complaint, can limit the foundation of its claim to just the one document, and we will correspondingly limit our consideration to the Angiotech agreement. Graehling v. Village of Lombard, 58 F.3d 295, 297 (7th Cir. 1995). This formulation would make the agreement supply the concerted action needed for the antitrust violation. Cook argues that the agreement is *per se* illegal, but we disagree, heeding the Supreme Court's cautions against extending the *per se* analysis to cases involving restraints whose economic impact is not immediately obvious. FTC v. Indiana Federation of Dentists, 106 S.Ct. 2009, 2018 (1986). The simple fact that a cooperative activity involves a restraint or exclusion does not mean its anticompetitive consequences will predominate, justifying *per se* treatment. Northwest Wholesale Stationers, Inc. v. Pacific Stationers and Printing Co., 105 S.Ct. 2613, 2620 (1985). This case does not involve price-fixing, or a group boycott, or another situation where the *per se* rule is warranted. See Toys "R" Us, 221 F.3d at 936; Denny's Marina, 8 F.3d at 1220. Because the agreement does not fall within this narrow category, the antitrust potential of the Angiotech agreement must be assessed in accordance with the "rule of reason." Indiana Federation of Dentists, 106 S.Ct. at 2018. The rule of reason entails a complex inquiry into the surrounding circumstances that is not susceptible to resolution on a motion to dismiss, and we conclude that, with respect to the Angiotech agreement, Cook has properly alleged the first element of their claim.

Boston's opposition to the Cook's allegations of the final two elements centers on the lack of sufficient facts within the complaint to establish them. These arguments are more appropriate to a motion for summary judgment; antitrust claims are not among the special matters of Fed. R. Civ. Proc. 9 that require heightened pleading. On a motion to dismiss, we look only to the sufficiency of the allegations, not to evidentiary support. Because Boston takes issue only with the factual support of Cook's allegations, we cannot conclude that Cook's allegations are legally flawed, and we accordingly deny the motion to dismiss Count III.

### III. Breach of Covenant of Good Faith and Fair Dealing

As stated above, Boston's answer includes a counterclaim for breach of contract and another for breach of the implied covenant of good faith and fair dealing. Cook seeks to dismiss the second counterclaim on the grounds that Illinois law does not recognize an independent cause of action for breach of the implied covenant. Boston counters that Illinois law is irrelevant to the issue because section 11.2 of the Angiotech agreement specifies that the agreement will be governed by the laws of the state of Washington. Illinois choice-of-law rules require that a court honor a contractual choice of law unless the chosen law violates Illinois public policy. Scentura Creations, Inc. v. Long, 756 N.E.2d 451, 456 (Ill. App. Ct. 2001). Cook counters that the contractual choice cannot stand because Washington's position on the issue flies in the face of Illinois public policy.

Boston argues that the second counterclaim is viable because Washington, unlike Illinois, supplies a freestanding cause of action for breach of the implied covenant. We disagree. Washington law, though not as explicit on the point as Illinois has been, shares Illinois's view that the implied covenant of good faith and fair dealing is a rule of construction to be used in interpreting the express conditions of a contract; neither state recognizes a "free-floating duty of good faith unattached to the underlying legal document." Badgett v. Security State Bank, 807 P.2d 356, 360 (Wash. 1991); see also Coleman v. Madison Two Associates, 718 N.E.2d 668, 675 (Ill. App. Ct. 1998). The cases upon which Boston relies do not hold otherwise. Rather, they stand for the propositions that an assignment of a contract does not relieve the assignor of its obligation to act in good faith and that parties to specific kinds of contracts can be subject to heightened duties imposed by sources other than the contract itself. Coventry Associates v. American States Ins. Co., 961 P.2d 933, 935-38 (Wash. 1998) (holding that insurance companies can be subject to causes of action for breach of good faith imposed by Washington statutes); Lonsdale v. Chesterfield, 662 P.2d 385, 387-388 (Wash. 1983) (holding that an assignor of a contract must act in good faith even after assignment); State v. Van Buren, 2 P.3d 991, 996 (Wash. Ct. App. 2000) (stating that prosecutor's obligation to act in good faith with regard to plea agreements is supplemented by due process concerns). Because the two states treat the issue in a similar fashion, we agree with Boston that the choice of Washington law does not flout

Illinois public policy, and we are therefore obligated to enforce the contractual choice of law. However, Boston has not alleged that Cook's obligations toward it arise from any source but the Angiotech agreement, so Washington law does not impose a free-floating duty of good faith that would support their second counterclaim. Instead, any discussion of the implied covenant of good faith and fair dealing is properly raised as a facet of their first counterclaim for breach of contract. The second counterclaim therefore does not state a claim upon which relief can be granted; it is dismissed.

## CONCLUSION

Based on the foregoing analysis, we dismiss Count II of Cook's complaint and Boston's second counterclaim. Boston's motion to dismiss Count III is denied.

*Charles P. Kocoras*

Charles P. Kocoras
United States District Judge

Dated: FEB 2 8 2002