Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9479 | **DATE** | 3/14/2002 |
| **CASE TITLE** | Cook, Inc. vs. Boston Scientific Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Plaintiff Cook's Motion to Compel is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COOK, INC. ) | |
| ) | |
| ) | |
| Plaintiff, ) | No. 01 C 9479 |
| ) | |
| v. ) | |
| ) | District Judge Charles P. Kocoras |
| BOSTON SCIENTIFIC CORP. ) | |
| ) | |
| ) | Magistrate Judge Nan R. Nolan |
| Defendant. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Cook, Inc. ("Cook") brings this action against Boston Scientific Corp. ("BSC"), seeking a declaratory judgment and alleging violations of the Lanham Act and the Sherman Act. BSC answered and asserted counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. On February 28, 2002, Judge Kocoras granted BSC's motion to dismiss Cook's Lanham Act claim, and he granted Cook's motion to dismiss the counterclaim for breach of the implied covenant of good faith and fair dealing.[1]

This matter is now before this Court on Cook's Motion to Compel. Cook's motion seeks to compel BSC to respond more fully to three interrogatories and nine document requests.[2] The Court

---

[1] The parties' allegations and claims are fully set forth in Judge Kocoras's opinion. *See Cook, Inc. v. Boston Scientific Corp.*, No. 01 C 9479, 2002 WL 335314 (N.D. Ill. Feb. 28, 2002).

[2] As reflected in a March 12, 2002 letter from BSC, the parties have resolved their disputes concerning two Interrogatories, numbers 4 and 6; and two Document Requests, numbers 20 and 34. In addition, Cook has narrowed the scope of Document Requests 36-38.

1

has considered the parties' briefs, oral arguments, and supplemental submissions. For the reasons that follow, Cook's motion is GRANTED in part and DENIED in part.

## DISCUSSION

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Discovery may be limited if the Court determines it is "unreasonably cumulative or duplicative," or if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2).

The disputed discovery requests involve documents relating to antitrust issues; BSC's licensing and/or distribution agreements with third parties; and third-party clinical studies. Each of these disputed categories will be discussed in turn.

### *Antitrust Documents*

Cook's Document Request 35 seeks "Documents sufficient to identify any lawsuits, or threatened lawsuits, involving claims of antitrust violations, whether made by or asserted against BSC, or any allegations or references of any kind to antitrust violations made by or asserted against BSC." At oral argument, the Court questioned Cook about the relevance of this request. Cook's counsel asserted that the request sought documents in which BSC has defined the relevant product market in the context of a Sherman Act claim. Cook argued that BSC's prior claims about the relevant market could be used to impeach testifying witnesses if they take inconsistent positions in the present action. The Court gave Cook an opportunity to submit case law in support of this argument.

2

Cook submitted to the Court three cases that it apparently believes are relevant to this issue.[3] None of the cases, however, supports Cook's motion to compel a response to Document Request 35. First, Cook presents *Jones v. Benefit Trust Life Ins. Co.*, 800 F.2d 1397 (5th Cir. 1986), which held that a district court did not abuse its discretion by admitting evidence of a different policy issued by the defendant insurer for the purpose of impeaching its witnesses on the issue of whether the language of the plaintiff's policy was ambiguous. *Id.* at 1400-01. This case does not support Cook's claim at oral argument that prior legal positions taken by a corporate entity can be used to impeach testifying witnesses.

Second, Cook submits *United States v. Int'l Bus. Machs. Corp.*, 66 F.R.D. 180 (S.D.N.Y. 1974), an antitrust case that held a defendant who claims the relevant market is broader than the plaintiff does must provide discovery related to that broader market. *Id.* at 184-85. Unlike the plaintiff in *IBM*, however, Cook is not seeking documents related to the broader market as defined by BSC; Cook seeks documents relating to prior instances in which BSC has defined the relevant market. *IBM* does not support Cook's request.

Finally, Cook offers *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73 (D. Mass. 1976), which states that under Michigan law, records of similar product liability complaints are discoverable in a product liability action. *Id.* at 75. Even setting aside the fact that *Kozlowski* is a product liability action and the present case is not, *Kozlowski* lends no support to Cook's claim that it should discover not only prior complaints against BSC but that it is entitled to "any allegations or references of any kind to antitrust violations made by or asserted against BSC." Cook has offered no authority

---

[3]Cook submitted four cases to the Court but did not designate which case supported each interrogatory or document request. Three of the cases are arguably relevant to Document Request 35.

3

establishing that the information it seeks in Document Request 35 is relevant and therefore has not shown that the benefit of discovery outweighs the burdensomeness of the request. Cook's motion to compel BSC to respond to Document Request 35 is denied.

### *Third-Party Distribution and Licensing Agreements*

Cook's Interrogatory 5 and Document Requests 18, 19, and 33 ask for documents and information relating to BSC's distribution and/or licensing agreements with third parties. Interrogatory 5 and Document Request 18 seek information dating back ten years, and Interrogatory 5 and Document Requests 18 and 19 seek information relating to every BSC product, not just drug-coated stent products.[4]

BSC objects to these requests, arguing that documents relating to products other than the one at issue in the litigation are irrelevant and commercially sensitive, and that it would be unduly burdensome to produce them. BSC also objects to producing documents created prior to July 7, 1996, claiming that they are irrelevant.

At oral argument, Cook claimed that third-party agreements are relevant to show the custom and usage of the term "distribute" in the Angiotech Agreement. BSC claims that "distribute" means the parties to the contract are not allowed to delegate the distribution task. Cook argues that it should be able to test BSC's definition of "distribute" and discover whether BSC has entered into prior licensing and/or distribution agreements in which it has delegated product distribution.

In support of its request, Cook submits *Cibro Petroleum Prods., Inc. v. Sohio Alaska Petroleum Co.*, 602 F. Supp. 1520 (N.D.N.Y. 1985). In *Cibro*, the district court held that, under

---

[4]BSC represented to the Court that it currently markets around 3000 products in approximately 150 countries by itself and through its several domestic and international subsidiaries. In the past ten years, BSC has marketed an additional 5000 products.

4

Rule 406 of the Federal Rules of Evidence, contracts with third parties may be admissible to show custom and usage and help to interpret an agreement's terms. *Id.* at 1551. The issue here, however, is not what kind of evidence a party can use to show custom and usage. The more fundamental inquiry, which neither party addresses, is whether any extrinsic evidence of the contract's terms will be admissible in the first place.[5]

The Seventh Circuit has considered this issue, finding that Illinois courts do not hold rigidly to the "four corners rule," which forbids the use of extrinsic evidence unless a contract is "intrinsically ambiguous," meaning that the agreement is ambiguous or inconsistent on its face. *See Home Ins. Co. v. Chicago & Northwestern Transp. Co.*, 56 F.3d 763, 767-68 (7th Cir. 1995). Instead, Illinois recognizes the doctrine of "extrinsic ambiguity," which may exist when a contract appears to be clear and unambiguous on its face, but "anyone who understood the circumstances in which the contract had been intended to apply would know that it does not mean what it seems to mean." *Id.* at 768; *accord Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 568 (7th Cir. 1995). In such a case extrinsic evidence may be admitted "'on a provisional basis'" in order for the Court to determine whether the contract in fact contains an ambiguity. *Home*, 56 F.2d at 768 (citation omitted).

Not all extrinsic evidence is admissible to show an extrinsic ambiguity. "Subjective" evidence -- the parties' own testimony about the meaning of a contract -- is "invariably self-serving, inherently difficult to verify and thus, inadmissible." *Id.* Objective evidence "is evidence of

---

[5]Cook correctly points out that under Fed. R. Civ. P. 26, information need not be admissible to be discoverable; it only has to be "reasonably calculated to lead to the discovery of admissible evidence." However, because Cook has not explained how inadmissible evidence about an unrelated third-party contract could lead to the discovery of admissible evidence, the admissible/discoverable distinction is immaterial.

ambiguity 'that can be supplied by disinterested third parties,' such as custom or usage of the trade." *Id.* Objective evidence is admissible because it is difficult to fabricate such evidence and because the evidence will not be presented to a jury unless the judge first determines that the evidence establishes the existence of "a genuine ambiguity." *Id.* at 768-69.

Cook has not expressly alleged that the Angiotech Agreement contains an extrinsic ambiguity, but such a claim can be inferred from Cook's expressed intention to use evidence of custom and usage to show that the contract term "distribute" may have a broader meaning than that claimed by BSC. Whether or not the district court would find such evidence admissible, this Court finds that it is discoverable.

The scope of that discovery will be limited, however, to objective evidence of agreements that closely parallel the Angiotech Agreement. Third-party agreements should be admitted to show customary practice only when the agreements are strongly analogous to the contract at issue. *See Cibro*, 602 F. Supp. at 1521 ("'Subsidiary evidence of parallelism must be strong and convincing when dealing with third party situations, and there is every reason to believe that standards of admissibility should be higher than when dealing with transactions between the same parties.'") (citation omitted). Moreover, Cook has not established that documents relating to BSC's distribution agreements ten years ago are relevant, nor has Cook explained why documents involving products not closely related to the Paxitaxel-coated stent product at issue in the case are relevant, particularly considering that it would be a substantial burden for BSC to produce them.

Therefore, this Court grants Cook's motion to compel responses to Interrogatory 5 and Document Requests 18, 19, and 33 in part and orders BSC to produce to Cook a list of any and all licensing and/or distribution agreements: (1) that involve drug-coated stent products; (2) having an

effective date ranging from July 7, 1996 to the date of this action; (3) to which BSC is a signatory; and (4) which contain a provision or provisions allowing and/or requiring any party to the contract to "distribute" the product at issue in the contract. The list must include the names of all parties to the contract; the product(s) involved in the contract; and the language of the distribution provision(s), with as much additional language as is necessary to put the distribution provision into context.

The Court is mindful of BSC's concern that Cook's discovery requests seek commercially sensitive information and believes that the concern is alleviated by the limited nature of the discovery ordered in this opinion. If BSC remains concerned about the disclosure of confidential information, it may present the Court with a carefully drafted protective order.

### *Third-Party Clinical Studies Agreements*

Document Requests 36-38 seek to discover arrangements between BSC and any other company regarding clinical studies of BSC's products. Cook's counsel has represented to the Court that Cook does not wish to discover any raw data from clinical studies, only documents reflecting the "interface" between BSC and those performing the studies. Requests 36 and 37 are limited to drug-coated stent products, but Request 38 seeks information about clinical studies for all BSC products sold after 1995. Requests 36 and 38 involve clinical studies that were actually performed and/or for which BSC had executed contracts; Request 37, however, seeks documents relating to proposed agreements or proposed arrangements to perform clinical studies. BSC argues that information regarding clinical studies of products other than the products at issue in this litigation is irrelevant and commercially sensitive.

Cook has shown that certain documents related to clinical studies are relevant to some of its claims and defenses, but the scope of discovery is not unlimited. As discussed above, Cook has not

demonstrated the relevance of third-party agreements related to products not involved in this litigation. Moreover, Cook has not shown that it is entitled to discovery of prospective agreements as well as executed contracts. The Court therefore grants Cook's motion in part and orders BSC to produce the names of companies that performed or are performing clinical studies on any drug-coated stent product from July 7, 1996 to the date of this action and to describe the operative terms of any such clinical study agreement.

## CONCLUSION

For the reasons set forth above, Cook's Motion to Compel is GRANTED in part and DENIED in part.

ENTER:

*Nan R. Nolan*

Nan R. Nolan
United States Magistrate Judge

Dated: March 14, 2002