**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED

APR 1 6 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| COOK INCORPORATED, | ) | |
| | ) | No. 01 C 9479 |
| Plaintiff, | ) | |
| | ) | Judge Charles P. Kocoras |
| v. | ) | |
| | ) | Magistrate Judge Nan R. Nolan |
| BOSTON SCIENTIFIC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
APR 1 9 2002

## NOTICE OF MOTION

TO:  Edward Han                      Michael P. Padden
     Matthew M. Wolf                 Michael K. Lindsey
     HOWREY SIMON ARNOLD & WHITE     HOWREY SIMON ARNOLD & WHITE
     1299 Pennsylvania Avenue, N.W.  321 North Clark Street, Suite 800
     Washington, DC 20004            Chicago, Illinois 60610

PLEASE TAKE NOTICE that on Thursday, April 18, 2002, at 9:45 a.m. or as soon

thereafter as counsel may be heard, we shall appear before the Honorable Charles P. Kocoras in

Room 2503 at the Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, and

then and there present Cook's Motion for a Protective Order, a copy of which is attached hereto

and is herewith served upon you.

Dated: April 16, 2002

_____
Ronald Wilder
Frederick J. Sperling
John A. Bannon

SCHIFF HARDIN & WAITE
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500

Counsel for Plaintiff Cook Incorporated

FILED

APR 16 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

COOK INCORPORATED,                    )
                                      )    No. 01 C 9479
            Plaintiff,                )
                                      )    Judge Charles P. Kocoras
    v.                                )
                                      )    Magistrate Judge Nan R. Nolan
BOSTON SCIENTIFIC CORPORATION,        )
                                      )
            Defendant.                )

DOCKETED
APR 19 2002

### COOK'S MOTION FOR A PROTECTIVE ORDER

Plaintiff Cook Incorporated, by its attorneys, respectfully moves this Court for a protective order staying the two depositions that defendant Boston Scientific Corporation ("BSC") has noticed and any other depositions until this Court's ruling on the parties' pending motions for summary judgment determines whether any depositions will be necessary. In support of this motion, Cook states as follows:

1.      At the February 28, 2002 hearing before this Court, BSC's counsel clearly stated that "we do agree that the Angiotech agreement is unambiguous." (Feb. 28, 2002 Tr. at 6, a copy of which is attached hereto as Ex. A.) BSC's counsel, however, asked to take depositions concerning the Guidant agreements, which the Court squarely rejected. (Ex. A at 9.)

2.      On April 9, 2002, Cook's counsel Frederick J. Sperling received a letter dated April 5, 2002 and a Notice of Deposition of Cook Incorporated Pursuant to Rule 30(b)(6) from BSC's counsel Christina G. Sarchio. (A copy of the letter and notice is attached hereto as Ex. B.) The notice purports to schedule Rule 30(b)(6) depositions for Cook for May 6, 2002 – after Cook's summary judgment briefs are due but before BSC's final summary judgment brief is due – and lists as the subjects for the depositions both the Angiotech agreement (which BSC's



counsel admitted was unambiguous) and the Guidant agreements (as to which BSC's counsel unsuccessfully requested depositions during the February 28, 2002 hearing before this Court.)

3.     On April 9, 2002, when Cook's counsel Mr. Sperling told BSC's counsel Ms. Sarchio that he thought the notice was inconsistent with this Court's February 28, 2002 ruling concerning depositions, she stated that the depositions BSC was seeking had nothing to do with the pending motions for summary judgment.

4.     Taking a different tack, on the following day, Ms. Sarchio asked Mr. Sperling whether he would object if BSC sought to use the Cook depositions in connection with the pending motions for summary judgment, and he said that he thought that would be inconsistent with the February 28, 2002 ruling.   On the same day, BSC's counsel Matthew M. Wolf confirmed to Mr. Sperling that the notice was indeed in connection with the pending motions for summary judgment.

5.     Later on that same day, April 10, 2002, Ms. Sarchio sent Mr. Sperling a letter by facsimile advising him that "the deposition of Dr. William Hunter will take place on May 30, 2002 in Vancouver."  (A copy of this letter is attached hereto as Ex. C.)  Dr. Hunter is the Chairman and CEO of Angiotech, the licensor to Cook and BSC.

6.     On April 15, 2002, Mr. Wolf advised Mr. Sperling that although BSC did not intend to move to compel the depositions of Cook at this time, it did intend to proceed with the deposition of Dr. Hunter on May 30, 2002.

7.     BSC's attempt to proceed with the depositions of Cook and Angiotech prior to this Court's ruling on summary judgment directly contravenes this Court's February 28, 2002 ruling. This Court clearly told BSC's counsel that if they felt they needed additional discovery, they

should say so in their summary judgment papers. Instead, BSC's counsel appear to have made the unilateral decision to ignore this Court's ruling.

8.      This Court is doing exactly what BSC requested by proceeding with this case on an expedited schedule. Indeed, this Court has set a June 6, 2002 ruling date on the parties' motions for summary judgment, a mere three weeks after the completion of briefing.

9.      In prior conversations, counsel for the parties discussed that one of the benefits of proceeding with motions for summary judgment at this time would be that it would either eliminate the need for depositions altogether or, if the motions for summary judgment did not result in a final disposition of the case, that the Court's ruling would likely narrow and focus the issues requiring further discovery. Counsel for the parties also agreed that neither side should unilaterally schedule depositions, but rather the depositions should be scheduled through consultation.

10.     On April 9, 10, and 15, 2002, Cook's counsel Frederick J. Sperling consulted by telephone with BSC's counsel Christina G. Sarchio and Matthew M. Wolf in a good faith attempt to resolve the issues addressed in this motion, but they were unable to reach an accord.

WHEREFORE, Cook respectfully requests this Court to adhere to its February 28, 2002 ruling and stay any depositions in this case until after this Court's ruling on the pending motions for summary judgment determines whether any depositions will be necessary.

Dated: April 16, 2002

Respectfully submitted,

Ronald Wilder
Frederick J. Sperling
John A. Bannon

SCHIFF HARDIN & WAITE
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500

Counsel for Plaintiff
Cook Incorporated

# EXHIBIT   A

1                IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
2                      EASTERN DIVISION

3

COOK, INCORPORATED,                ) Docket No. 01 C 9479
4                            )
                  Plaintiff,   )
5                            )
            vs.               )
6                            )
BOSTON SCIENTIFIC CORPORATION,   ) Chicago, Illinois
7                            ) February 28, 2002
                Defendant.   ) 9:45 o'clock a.m.
8

9         TRANSCRIPT OF PROCEEDINGS - STATUS & RULING
          BEFORE THE HONORABLE CHARLES P. KOCORAS
10

11

APPEARANCES:
12

13  For the Plaintiff:     MESSRS. SCHIFF, HARDIN & WAITE
                      BY:  MR. FREDERICK J. SPERLING
14                        MR. JOHN BANNON
                    233 S. Wacker Drive, Suite 6600
15                    Chicago, Illinois  60606

16

   For the Defendant:     MESSRS. HOWREY & SIMON
17                    BY:  MR. EDWARD HAN
                      MR. MATTHEW M. WOLF
18                    1299 Pennsylvania Avenue, N.W.
                    Washington, D.C.  20004
19

20  Court Reporter:        MS. JOENE HANHARDT
                    Official Court Reporter
21                    219 S. Dearborn Street, Suite 2502-A
                    Chicago, Illinois  60604
22                    (312) 435-6874

23        * * * * * * * * * * * * * * * * *

24               PROCEEDINGS RECORDED BY
                MECHANICAL STENOGRAPHY
25         TRANSCRIPT PRODUCED BY COMPUTER

```
 1              THE CLERK:  01 C 9479, Cook, Incorporated vs. Boston

 2    Scientific.  Status and ruling.

 3              MR. SPERLING:  Good morning, your Honor, Fred

 4    Sperling and John Bannon on behalf of the plaintiff Cook.

 5              MR. HAN:  Good morning, your Honor, Ed Han and my

 6    colleague Matt Wolf for Boston Scientific.

 7              THE COURT:  Good morning.

 8              We have a written opinion in this case, which has

 9    produced some mix results, and I will tell you what they are.

10              We are going to grant the motion to dismiss Count 2

11    of the complaint -- Cook's complaint.  That is the Lanham Act

12    claim.  And we are going to grant the motion to dismiss

13    Boston's second counterclaim.

14              But the antitrust claim, at least, presently

15    survives, although it is predicated on the Angiotech agreement

16    to which Cook is a party.

17              I guess that would make you an antitrust, what,

18    co-conspirator if Boston is -- you are in an awkward position.

19              I know it is an alternative position, but --

20              MR. SPERLING:  You are absolutely right, Judge.

21              THE COURT:  -- the alternative seems awkward.

22              MR. SPERLING:  This is the problem.  We argue that

23    the agreement -- we argue we did not intend that restriction.

24    But if the BSC were to prevail --

25              THE COURT:  The document manifests the intention, and
```

1    trumps whatever subjective thought process was taking place.

2              MR. SPERLING:  Exactly, Judge.  Exactly.

3              THE COURT:  I am not saying this -- who is from

4    Boston here?  You represent Boston?

5              MR. HAN:  Yes, your Honor.

6              THE COURT:  Relax.  I am not making any findings

7    here, but we are having this discussion.

8              (Laughter.)

9              MR. SPERLING:  But you are absolutely right, Judge.

10   If the contract were construed with the limitation that Boston

11   argues for, the contract would be an agreement in restraint of

12   trade and we would be a party to it.  You are right.

13             THE COURT:  Well, I think under the pleading

14   standard, and while the antitrust claim is barely sufficiently

15   alleged, I think it is sufficiently alleged.  So, it survives,

16   although it presents a quagmire that we may not reach.

17             I think it is essentially a contract interpretation

18   question.

19             MR. SPERLING:  Judge, maybe one thing --

20             THE COURT:  And I think that is how it will

21   ultimately fall out.

22             MR. SPERLING:  -- we will address later today, we are

23   not proposing to move for summary judgment on the Sherman Act

24   count at this time, and the resolution of the other issues --

25   the contract issues -- may make that unnecessary.

1    THE COURT:  I am also holding that that is not a per

2  se violation claim.  The rule of reason applies, even to that

3  contract.

4    MR. SPERLING:  Judge, I have one question.  BSC, in

5  answering the written discovery from Cook, has identified

6  additional communications, apart from the press release, on

7  the same subject.  We don't yet have the details of those and

8  we would move to compel on that.  But is the ruling on the

9  Lanham Act count with prejudice or without?

10    THE COURT:  Well, it is with prejudice, in the sense

11  that I do not want you to repeat it.  If you get something

12  new, then I am not going to foreclose you from attempting to

13  bring some claim based on something new.  But I am not going

14  to revisit anything I have done.

15    MR. SPERLING:  I understand.

16    THE COURT:  But what they did in their press release

17  is simply not actionable.  So, that is the end-all.

18    So, where do we go from here, once you have consumed

19  the ruling?

20    MR. SPERLING:  Well, Judge, at the last hearing the

21  Court asked whether it could not resolve the contract dispute

22  between Cook and BSC, by construing the language of the

23  agreement, and counsel for both Cook and BSC agreed that the

24  Court could do that.

25    In recent conversations, Cook and BSC's counsel have

1    re-confirmed that neither party believes that the agreements

2    are ambiguous.

3          Cook is prepared to proceed with its motion for

4    summary judgment, and that is on the contract issue.  And

5    until two days ago, we thought BSC was prepared to proceed

6    with its cross motion for summary judgment on its breach of

7    contract claim.

8          Unfortunately, however, BSC has now taken the

9    position that it wants to take depositions of both Cook and

10   Guidant concerning the Guidant agreement, even though it does

11   not point to any ambiguity in the Guidant agreement.

12         And what we did, Judge, is we asked, "Well, what are

13   the issue that BSC wants to address?"

14         And BSC's response was that that would reveal their

15   deposition strategy.

16         We then came back and we said, "Well, we will answer

17   any questions you have about the Guidant agreement and maybe

18   we can prepare a stipulated statement of undisputed facts."

19         We were told, "No," they wouldn't even address that

20   with their client.

21         What they did say is they want to explore what they

22   called gap-filling issues.

23         Now, Judge, every one of the Guidant agreements has

24   an integration clause, and the courts have consistently held

25   that there should be no resort to parol evidence when an

1    agreement is unambiguous, particularly where the agreement

2    contains an integration clause.

3          So, Judge, what we would propose to do is we are

4    prepared to proceed to submit a motion and supporting brief

5    for summary judgment on our claim.

6          If BSC chooses not to do so on its claim, obviously,

7    we can't force them to. But we think we ought to present the

8    contracts to the Court and see if we can't avoid a lot of

9    unnecessary time and expense.

10         MR. HAN: Your Honor, the central issue in this case,

11   as you have correctly discerned, is whether the contract or

12   the agreement -- the transaction -- between Cook and Guidant

13   violates the license among Cook, BSC and Angiotech. And while

14   we agree that a lot can be short-circuited -- because we do

15   agree that the Angiotech agreement is unambiguous -- we,

16   Boston Scientific, is at the disadvantage of being a stranger

17   to the other relevant transactions.

18         THE COURT: But why is that other transaction so

19   relevant if the contract presently is unambiguous?

20         And you need someone to construe whether or not what

21   Cook did was within or without the scope of its contract with

22   Angiotech. Why does it matter what else they might have done?

23         You need some definition or some interpretation as to

24   the limit or the permissive character of anything else Cook

25   can do. And it does not depend on what they choose to do.

```
 1              I mean, you can tell me generally what they have
 2   done, that you say is a violation of the existing agreement,
 3   but I need to read the existing agreement to say whether they
 4   can do anything beyond or -- you know, generally, what they
 5   have done with Guidant.  You do not need chapter and verse on
 6   the Guidant contract.
 7              MR. HAN:  Your Honor --
 8              THE COURT:  And I do not want to cut you off here;
 9   but, I do not see, in light of your view that, consistent with
10   their view, the contract terms are unambiguous.  And the first
11   order of business is to decide what it means by me.  And it
12   may -- I think that is the most efficient way to do that.
13              Mr. Sperling, no one can force you to file a motion
14   for summary judgment, but he is going to ask me to entertain
15   his, and I plan to do that.
16              I think the first order of business is for me to read
17   this contract; that each of you have your shot at what you
18   think it means; and, then, I will tell you whether I agree
19   with -- which one of you I agree with.
20              I am going to agree with one of you.  I do not know
21   which one.
22              MR. HAN:  Your Honor, if you limit it to what the
23   Angiotech agreement says, then there isn't much there.
24              THE COURT:  Your position is that they violated that
25   agreement.
```

1    MR. HAN:  Yes, it is, your Honor.

2         THE COURT:  Well, then, I have to read that agreement

3  to find out if they violated it or not.

4         MR. HAN:  Well, your Honor, the violation is based on

5  a transaction that --

6         THE COURT:  That you have a pretty good idea --

7         MR. HAN:  -- we are not a party to.

8         THE COURT:  I understand that.  But you know what

9  that transaction is; do you not?

10        MR. HAN:  Well, this is an element of fact --

11        THE COURT:  Do you have that contract?  Do you have

12  the Guidant contract?

13        MR. HAN:  The basic contract documents have been

14  produced.

15        THE COURT:  What do you need besides that?

16        MR. HAN:  Well, your Honor, under the law that we are

17  going to proceed under, our challenge is based on a case

18  called DuPont vs. Shell, which is the leading case in this

19  area.  And that case requires the Court to not look at any

20  specific provision of the transaction that Cook and Guidant

21  have entered into, but to look at the transaction as a whole

22  and determine whether it is tantamount to a sublicense, which

23  is expressly prohibited by the Angiotech agreement.

24        THE COURT:  Fine.  Why do we have to go behind that

25  written agreement?  Both parties -- Guidant and Cook -- are

1    constrained by what they have agreed to.

2         MR. HAN:  First --

3         THE COURT:  You are giving me a lot of stuff that I

4    am not signing on to.  I am going to entertain their motion

5    for summary judgment now.  And you can file one, too, if you

6    like.  I think you should, so I have at least competing

7    versions.

8         And if your answer -- if your answer -- to their

9    motion is that you do not have enough information and, "We

10   need all of this other outside discovery on this other

11   contract," then that can be your position.

12        But I also want you to give me a legal position why

13   that is both compelling and why they are wrong in their

14   position.  Otherwise, you run the risk of losing.  So, that is

15   my guidance to you.

16        So, my view is the first order of business is to

17   review this, the Angiotech agreement, and see -- and in light

18   of the fact that you have the Guidant agreement -- for me to

19   see whether they did what they legally could do or whether you

20   are right and they were constrained from engaging in that

21   transaction.

22        And nothing else makes sense to me, quite frankly,

23   procedurally, and that is the way I am going to approach this.

24        MR. SPERLING:  Judge, we had agreed, in the event

25   that that were your ruling, on a briefing schedule to propose

```
 1    to the Court, which would be three weeks for the motion and
 2    supporting brief, three weeks for a response and two weeks for
 3    a reply, if that is acceptable for the Court.
 4              THE COURT:  That is fine with me.
 5              MR. SPERLING:  And, Judge, we will be moving.  I
 6    don't know if they are going to.
 7              MR. HAN:  Your Honor, I do not think we have an
 8    actual agreement as to that.
 9              THE COURT:  You do not have to agree.  I am going to
10    entertain his motion.  You do not have to file anything.  That
11    is your call.
12              MR. SPERLING:  I didn't mean to say as to theirs.  I
13    understand they have not decided.
14              THE COURT:  No, right.
15              MR. SPERLING:  I meant, it's their motion.
16              THE COURT:  The present schedule is, on the
17    assumption only Cook will file, is three weeks, three weeks
18    and two weeks.
19              Steve will give you those hard dates and a ruling
20    date.
21              And, then, if you decide -- and I am not -- I am not
22    telling you how to run your lawsuit -- if you decide to do
23    that, I am going to ask you to make that decision quickly,
24    though, so that we can rearrange the schedule to accommodate
25    both motions, should there be a second one filed.
```

1              But, anyway, we will give you presently the schedule

2   for this one, that we know is going to come, and deal with it

3   accordingly.

4              MR. SPERLING:  Judge, if they move, can we simply

5   have the same schedule on both?

6              THE COURT:  No.  If they move, I do not know whether

7   I want contemporaneous submissions or not.  I do not know how

8   to deal with that just yet.  So, we will see what they decide.

9              MR. SPERLING:  You might adjust both schedules, then.

10            THE COURT:  But do you not see, then, I get two

11   independent briefs.  I have two briefing schedules with a lot

12   of information that is going to be common to both.  So, we are

13   going to read a lot of redundant material.

14            MR. HAN:  Your Honor, I think that under those

15   circumstances, if we do file a motion, it makes more sense to

16   have simultaneous briefing -- opening briefs and responding

17   briefs.

18            THE COURT:  That would be my view, actually.

19            MR. SPERLING:  Judge, my belief -- it, obviously,

20   depends on what they move -- there is overlap; that they raise

21   issues that we don't, and vice versa.

22            THE COURT:  Look, I do not know what they are going

23   to do.

24            MR. SPERLING:  I don't, either.

25            THE COURT:  And you do not, either.

1        So, why do we not act on what we know today; and,

2   then, if --

3        MR. HAN:  Your Honor --

4        THE COURT:  -- you are going to move, I want you to

5   come in and tell me that, and then we will try and arrange

6   something that is the most efficient way to deal with all of

7   the issues, and the most complete way so that everybody gets

8   their say.  And I will take suggestions on whichever way.  I

9   am not married to a procedure.

10       MR. HAN:  To save time, your Honor, I am confident

11  that we will move -- if this is your ruling -- even though we

12  do believe there is a risk that there will be 56(f) issues.

13       THE COURT:  That is my ruling and you can --

14       MR. HAN:  Okay.

15       MR. HAN:  Then perhaps we should simply decide on a

16  schedule now.

17       THE COURT:  Why is that procedure not -- the

18  simultaneous briefs?

19       MR. SPERLING:  They have a number of issues, your

20  Honor, which I don't know what they are going to say about,

21  that we don't.  Ours is very straight forward.

22       THE COURT:  Let me do it this way, then.  Just

23  everybody will have, I think, the same bite at the apple.

24       You move, he answers and you cross move in your

25  papers.  Okay?

1         You can reply to his answer and then supplement the

2    reply with any answer to his motion that -- any new material

3    that his motion inspires. And, then, he will have the last

4    reply to your answer to his motion.  So --

5         MR. SPERLING:  That is fine.

6         THE COURT:  -- you each get two submissions that way

7    and the record should be complete.  Okay?

8         Is that agreeable to both sides?

9         MR. HAN:  Yes, your Honor.

10        Should we set some dates?

11        MR. SPERLING:  I guess the only -- not surprisingly,

12   your Honor, is, as the movant, I am sorry that the other side

13   gets the last word.

14        THE COURT:  Somebody has got to get the last word

15   unless we do it simultaneously, and you have argued against

16   the simultaneous position.  So, since I agreed with the non-

17   simultaneous submissions, then somebody has to go last.

18        MR. SPERLING:  That makes sense, Judge.

19        THE COURT:  You went first, he went last and I

20   guarantee you this:  I will not read his last papers any more

21   critically than I read yours.  How is that?

22        (Laughter.)

23        THE COURT:  Do you want me to write that out and

24   notarize it?

25        MR. SPERLING:  No, your Honor.  Thank you.

```
 1          THE COURT:  All right.

 2          MR. HAN:  Should we say, in light of the schedule,

 3   could we do three, three, two, rather than three, three, two?

 4          THE COURT:  Three, three, two, two; is that what you

 5   said?

 6          MR. SPERLING:  I was going to ask if we could do

 7   three, three, three, two, since we are both --

 8          THE COURT:  That is okay.  All right.  The last is

 9   going to be purely a reply.  So, that is okay.

10          Three, three, three, two, Steve.

11          We are going to have a ruling in 2003.

12          (Laughter.)

13          THE COURT:  That is okay.

14          MR. SPERLING:  Thank you, Judge.

15          THE COURT:  Steve will give you those dates, though.

16          THE CLERK:  Plaintiff's motion for --

17          THE COURT:  Are you all here on this case?  That is a

18   lot of lawyers' time.

19          MR. SPERLING:  That is for Guidant, your Honor.

20          THE COURT:  Oh, Guidant is here.

21          Well, they do not presently have any standing to file

22   briefs or any of this.

23          THE CLERK:  Plaintiff's motion for summary judgment

24   is due March 21st; the defendant's answer and cross-motion is

25   April the 11th; the plaintiff's reply and answer to the cross-
```

1    motion is May 2nd; the defendant's reply is May 16th; and,

2    ruling, June 6th, 9:45.

3              MR. SPERLING:  Thank you, Judge.

4              THE COURT:  Okay.

5              MR. HAN:  Thank you, your Honor.

6

7                        *    *    *    *    *

8

9    I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

10

11   _____    _____, 2002
     Official Court Reporter               March 11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT  B



1299 PENNSYLVANIA AVE., NW
WASHINGTON, DC 20004-240
PHONE 202.783.0800
FAX 202.383.6610
A LIMITED LIABILITY PARTNERSHIP

April 5, 2002

Frederick J. Sperling, Esq.
Shiff Hardin & Waite
6600 Sears Tower
Chicago, IL 60606

      Re:    Cook, Incorporated v. Boston Scientific Corporation

Dear Fred:

      I am enclosing BSC's Notice of Deposition of Cook Incorporated pursuant to rule 30(B)(6). Please contact me if you have any questions.

                    Sincerely,

                    Christina G. Sarchio

Encl.


cc: R. Surrette

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|                                   |   |                                |
|-----------------------------------|---|--------------------------------|
| COOK INCORPORATED,                | ) |                                |
|                                   | ) |                                |
| Plaintiff,                        | ) | No. 01 L 9478                  |
|                                   | ) |                                |
| v.                                | ) | Judge Charles P. Kocoras       |
|                                   | ) |                                |
| BOSTON SCIENTIFIC CORPORATION,    | ) | Magistrate Judge Nan R. Nolan  |
|                                   | ) |                                |
| Defendant.                        | ) |                                |
|                                   | ) |                                |

**NOTICE OF DEPOSITION OF**
**COOK INCORPORATED**
**PURSUANT TO RULE 30(b)(6)**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, counsel for Boston Scientific Corporation ("BSC") will take the videotaped deposition upon oral examination of Cook Incorporated ("Cook"), on the subject matters set forth below. The deposition will commence at 9:00 a.m. on May 6, 2002 at the offices of Howrey, Simon, Arnold & White, 321 N. Clark St., Suite 800, Chicago, Ill. 60610.

Pursuant to Fed. R. Civ. P. 30(b)(6), Cook shall designate appropriate knowledgeable individuals who shall be able to testify regarding the following subjects:

1. The negotiation and drafting of the July 9, 1997 agreement among BSC, Cook and Angiotech Pharmaceuticals, Inc., (the "Angiotech Agreement").

2. Discussions within Cook concerning the purpose, construction, and effect of the Angiotech Agreement.

3. Communications with third parties, including BSC, Angiotech, Guidant Inc. ("Guidant"), Advanced Cardiovascular Systems, Inc. ("ACS"), the National Institute

of Health, and the Food and Drug Administration, concerning the purpose, construction, and effect of the Angiotech Agreement.

4. The negotiation and drafting of the August 16, 2002 agreements between Cook and ACS (collectively, the "ACS Deal").

5. Communications with third parties, including BSC, Angiotech, Guidant Inc. ("Guidant"), Advanced Cardiovascular Systems, Inc. ("ACS"), the National Institute of Health, and the Food and Drug Administration, concerning the purpose, construction, and effect of the ACS Deal.

6. Communications, whether internal or external, concerning the propriety of the ACS Deal vis-à-vis the Angiotech Agreement.

7. Cook's business plans including, but not limited to, strategic plans, operating plans, marketing plans, financial plans, production plans, and capital or investment plans regarding the Angiotech Technology.

8. Cook's actual performance of its rights and responsibilities under the ACS Deal.

9. ACS's actual performance of its rights and responsibilities under the ACS Deal.

10. The procedures and/or methods by which royalties to Angiotech are to be calculated and disbursed as a result of the ACS Deal.

11. The relevant antitrust market at issue in this case, including the relevant product market and all potential and actual competitors in that market.

12. Any injury Cook claims it has suffered or will suffer as a result of BSC's alleged anticompetitve activities.

13. Any injury to competition or the public interest as a result of BSC's alleged anticompetitve activities.

14. All allegations contained in your Complaint that have not been dismissed by the Court.

15. All defenses set forth in your Answer to BSC's Counterclaim.

April 5, 2002

Robert Ruyak
Matthew Wolf
Christina Sarchio
HOWREY SIMON ARNOLD & WHITE, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 783-0800

Michael P. Padden
Michael K. Lindsey
HOWREY SIMON ARNOLD & WHITE, LLP
321 North Clark Street
Suite 800
Chicago, IL 60610
Telephone: (312) 595-1239

**Attorneys for Defendant - Counterclaimant**
**BOSTON SCIENTIFIC CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Notice of Deposition of Cook Incorporated was served by United States mail, first-class postage prepaid, this 5th day of April, 2002 upon each of the parties listed below:

Frederick J. Sperling
John A. Bannon
Ronald Wilder
SHIFF HARDIN & WAITE
6600 Sears Tower
Chicago, IL 60606

Robert A. Surrette
MCANDREWS HELD & MALLOY
500 W. Madison Street, 34th Floor
Chicago, Illinois 60661

_Christina G. Sarchio_
Christina G. Sarchio

# Exhibit C

SENT BY: ·                    4-10- 2 ; 5:01PM ;         HOWREY & SIMON→          RightFAX3a;# 2/



HOWREY
SIMON
ARNOLD
& WHITE              ATTORNEYS AT LAW

1299 PENNSYLVA
WASHINGTON, D0
PHONE 202.783.0
FAX 202.383.661
A LIMITED LIABILITY

April 10, 2002

**VIA FACSIMILE AND REGULAR MAIL**

Frederick J. Sperling, Esq.
Schiff Hardin & Waite
6600 Sears Tower
Chicago, IL 60606

   Re:   <u>Cook, Incorporated v. Boston Scientific Corporation</u>

Dear Fred:

   I am writing to advise you that the deposition of Dr. William Hunter will take place on May 30, 2002, in Vancouver.

   I am also writing to inform you that we have considered your request to change the confidentiality designation of documents with the Bates range of BSC-CK 000683-689. BSC wishes to preserve the Highly Confidential status of those documents.

          Sincerely,

          Christina G. Sarchio

Cc:  R. Surrette
   D. Madrid

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2002 I served copies of the foregoing notice of motion and the motion referred to therein on the attorneys to whom the notice is addressed by having true and correct copies sent by facsimile and Federal Express to

> Edward Han
> Matthew M. Wolf
> HOWREY SIMON ARNOLD & WHITE
> 1299 Pennsylvania Avenue, N.W.
> Washington, DC 20004

and by facsimile and messenger to

> Michael P. Padden
> Michael K. Lindsey
> HOWREY SIMON ARNOLD & WHITE
> 321 North Clark Street, Suite 800
> Chicago, Illinois 60610

Kathryn D. Zalewski