IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COOK INCORPORATED, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 01-CV-9479 |
| v. | ) |
| | ) Chief Judge Charles P. Kocoras |
| BOSTON SCIENTIFIC CORPORATION, | ) Magistrate Judge Nan R. Nolan |
| Defendant. | ) |

## ADVANCED CARDIOVASCULAR SYSTEMS, INC.'S MOTION TO CLARIFY THE COURT'S OCTOBER 1, 2002, INJUNCTION ORDER

Advanced Cardiovascular Systems, Inc. ("ACS") hereby moves the Court for an order clarifying its October 1, 2002 injunction Order. In support of this motion, ACS submits a short Memorandum in Support of its Motion for Clarification of the October 1, 2002, Injunction Order.

Dated: November 1, 2002

Respectfully submitted,

*(signature)*

Philip S. Beck
Peter B. Bensinger, Jr.
Rebecca W. Bacon
**BARTLIT BECK HERMAN PALENCHAR & SCOTT**
54 West Hubbard, Suite 300
Chicago, Illinois 60610
Telephone: (312) 494-4400

Edward A. Mas II
Robert A. Surrette
**MCANDREWS, HELD & MALLOY, LTD.**

500 W. Madison Street, 34th Floor
Chicago, Illinois 60661
Telephone: (312) 775-8000

ATTORNEYS FOR
ADVANCED CARDIOVASCULAR SYSTEMS, INC.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COOK INCORPORATED, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 01-CV-9479 |
| v. | ) |
| | ) Chief Judge Charles P. Kocoras |
| BOSTON SCIENTIFIC CORPORATION, | ) |
| | ) Magistrate Judge Nan R. Nolan |
| Defendant. | ) |

## ADVANCED CARDIOVASCULAR SYSTEMS, INC.'S
## MEMORANDUM IN SUPPORT OF ITS MOTION
## TO CLARIFY THE COURT'S OCTOBER 1, 2002, INJUNCTION Order

Third party Advanced Cardiovascular Systems, Inc. ("ACS") moves for an order clarifying the Court's October 1, 2002 Injunction Order (the "Injunction"). In paragraph 4 of the Injunction, the Court retained jurisdiction as to issues concerning compliance with the Injunction. Pursuant to that paragraph, ACS requests clarification that the Injunction does not prohibit ACS from performing its FDA-required data collection and reporting obligations as "sponsor" of the ACHIEVE clinical trials. ACS must continue to perform these obligations in order to ensure the safety of the patients participating in the clinical trials and to comply with federal law. Boston Scientific Corporation ("BSC") has previously acknowledged that the Injunction would not prohibit these activities.

This motion is filed out of an abundance of caution and in view of ACS's intent to abide at all times with the terms of the Injunction. ACS submits that the clarification it seeks is

consistent with the existing Injunction. Counsel for ACS and BSC have conferred about this motion. The parties are currently discussing this motion and the parties believe that they may shortly be able to reach an agreement regarding a proposed order.

## I. THE DISTRICT COURT'S INJUNCTION

On October 1, 2002, the Court entered the following Injunction:

1. No person or entity shall render any performance under or attempt to enforce the ACS deal, which consists of agreements dated August 16, 2001 between Cook, Inc. and Advanced Cardiovascular Systems, Inc., and

2. Neither Cook, Inc. nor its affiliates shall directly or indirectly sell or transfer paclitaxel-coated stents to another party, or distribute paclitaxel-coated stents through another party in a manner inconsistent with the Angiotech agreement dated July 9, 1997, and

3. No information, data or technology generated or gathered in connection with the ACS deal shall be used for any commercial purpose, including the purpose of obtaining regulatory approval to sell paclitaxel-coated stents in the United States or elsewhere. Notwithstanding the foregoing, physicians may use such information, data or technology to provide medical care that they deem reasonable to patients who, as of the date of this order, were enrolled in clinical studies conducted in connection with the ACS deal, and

4. The court shall retain jurisdiction over any dispute regarding compliance with this order or Cook's compliance with the Angiotech agreement.

October 1, 2002, Order attached at Exhibit 1.

## II. BSC HAS ACKNOWLEDGED THAT ACS MAY CONTINUE TO COLLECT AND REPORT CLINICAL DATA TO ENSURE PATIENT SAFETY AND COMPLY WITH FEDERAL LAW

BSC has acknowledged that the Injunction it sought and which the Court granted would permit ACS to continue collecting, disseminating, and reporting data necessary to ensure patient safety and comply with federal law. In its prior submissions to this Court, BSC stated:

> The proposed injunction does not prohibit the collection of information necessary for medical treatment or as required by law.
>
> * * *
>
> [T]he injunction explicitly contemplates that such data will continue to be "generated" and "gathered," and provides that "physicians may use such information, data or technology to provide medically necessary and appropriate treatment to patients [already enrolled in the clinical trials.]
>
> * * *
>
> The proposed injunction restricts only the "use" of clinical data for the purpose of commercializing a paclitaxel-coated stent.
>
> * * *
>
> BSC expects Cook and Guidant to meet all of their obligations to patients enrolled in its clinical studies, the FDA, and any IRB, notwithstanding the absence of any commercial benefit.

(Reply Mem. in Further Support Of Boston Scientific Corporation's Mot. for Injunctive Relief ("BSC Reply") at 12, 13.)

BSC amended the wording of its original proposed language for the injunction order by adding the word "commercial" to Paragraph 3 to clarify that ACS can continue to collect, disseminate, and report the clinical data necessary to ensure patient safety and comply with federal law. (*See* BSC Reply at 13 n.7.)

### III. FEDERAL LAW REQUIRES ACS TO COLLECT AND REPORT THE CLINICAL DATA BECAUSE ACS SPONSORS THE ACHIEVE CLINICAL TRIALS

The Food and Drug Administration ("FDA") is the federal agency charged with enforcing those aspects of the Federal Food, Drug, and Cosmetic Act ("FDCA") that pertain to the safety and effectiveness of medical devices sold in, or exported from, the United States. *See* the Declaration of Robert L. Sheridan In Support Of Cook's Opposition To BSC's Motion For Injunctive Relief ("Sheridan Dec.") at ¶ 3. As part of the FDA review process for a Class III

3

medical device, such as the ACHIEVE stent, the FDA requires clinical investigations to obtain critical information for evaluating the device's safety and effectiveness. *Id.* at ¶ 8. In order to ensure that the rights, safety, and welfare of the patients participating in the clinical investigation are protected, the FDA highly regulates the manner in which a sponsor conducts human clinical trials.[1] *Id.*

The patients participating in the ACHIEVE clinical trials have undergone a procedure in which an interventional cardiologist deployed either the ACHIEVE stent or an uncoated control stent to treat a blockage in the coronary arteries.[2] Each patient agreed to be treated with a new "experimental" medical device. As with all "experimental" devices, however, there is no guarantee that the device will perform effectively or not cause unexpected problems in the test population. Therefore, in order to maximize patient safety, the FDA carefully regulates clinical trials and requires, among other things, that the sponsor perform complete and systematic data collection and analysis. *See, e.g.,* 21 C.F.R. pt. 50 ("Compliance with these parts is intended to protect the rights and safety of subjects involved in investigations filed with the [FDA] . . . ."); H.R. Conf. Rep. No. 105-399, at 77-78 (1997) (FDA's reporting requirements exist "for the protection of the public health and safety").

---

[1] For example, in order to conduct a clinical trial of a new device that involves significant risk, such as a coronary stent, the FDA requires the sponsor to obtain an "Investigational Device Exemption" ("IDE"). *See* Sheridan Dec. at ¶ 8. An IDE application includes proposed protocols that describe the clinical study's methodological approach and end-points to be evaluated. *Id.* Once approved, the IDE permits experiments to be conducted on patients. *Id.* In addition to IDE approval, the FDA requires local Institutional Review Board ("IRB") approval to conduct a clinical trial. *Id.*

[2] No additional patients have been enrolled in the trials since the Injunction issued.

4

ACS is the "sponsor" of the ACHIEVE clinical trials. A "sponsor" is the person who initiates and manages the clinical investigation, but does not actually dispense or use the device being studied. *See* Sheridan Dec. at ¶ 8 n.1. The sponsor is obligated to ensure that the clinical investigation is conducted in accordance with the IDE-approved protocol and all applicable regulations. *Id.* at ¶ 11. A fundamental duty of the sponsor is to collect information from the investigation and make reports to the FDA, IRBs, and the clinical investigators (*i.e.*, the participating cardiologists). *Id.*

As part of the ACHIEVE clinical trials, participating cardiologists evaluate patients at 14-day, 30-day, 180-day, 240-day, 270-day, and 365 day follow-up intervals and collect required information. As an example of what is required, at the 270-day follow-up, the protocol requires collection of the following data:

- Date of visit/contact, study identification number, and enrollment number;

- Data regarding any emergency treatment(s) and/or serious adverse events and/or need for repeat coronary angiography or interventions, and results of such, if applicable; and

- Use of medication protocol.

The cardiologists provide this information to the sponsor, ACS, which analyzes the information and determines whether any of the information needs to be submitted to the FDA and shared with all of the participating cardiologists.

The Court should not construe the Injunction to prohibit a sponsor's collection, analysis, and dissemination of clinical data to ensure patient safety and comply with FDA requirements. It is important to patient safety that the Court permit ACS to fulfill its duties as sponsor. Each investigator generates a limited amount of data on his or her limited number of patients. This data is closer to anecdotal data than statistically meaningful data. Consistent with FDA

5

regulations, the sponsor then gathers that data from multiple investigators and analyzes the totality of available relevant data in a statistically meaningful way. It is only when the sponsor conducts such statistical analyses of all available relevant data that likely outcomes and potential side effects may be evaluated. The sponsor then shares such analytical work and the data with all of the participating cardiologists and the FDA.

If patient follow-up data can not be collected at the times scheduled and fully analyzed, treating physicians will be unaware of problems arising in the test population. Patient care will be compromised. If, for example, the 270-day data indicates a significant incidence of an adverse event such as clotting or a renarrowing of the coronary artery, that information will likely influence how patients are monitored and treated in the future.

Thus, to ensure patient safety, the FDA has many specific regulations, such as:

1. Progress reports on the investigation (at least yearly) must be submitted to FDA and IRBs (21 C.F.R. § 812.150(b)(5));

2. Unanticipated adverse device effects evaluations must be submitted to FDA within ten days after the sponsor receives notice of the effect (21 C.F.R. § 812.150(b)(1));

3. Withdrawal of IRB approval of an investigation or part of an investigation (21 C.F.R. § 812.150(b)(2));

4. Withdrawal of FDA approval must be reported to all reviewing IRBs and participating investigators (21 C.F.R. § 812.150(b)(3));

5. Current investigator lists must be submitted to FDA at six-month intervals (21 C.F.R. § 812.150(b)(4));

6. Recall and device dispositions of any return, repair, or other disposition of a device must be reported to FDA (21 C.F.R. § 812.150(b)(6));

7. Final reports of the investigation must be submitted to FDA within thirty days of the completion of the study (21 C.F.R. § 812.150(b)(7));

8. Reports of use of the device without informed consent must be submitted to FDA (21 C.F.R. § 812.150(b)(8));

9. Upon request by an IRB or FDA, accurate reports about any aspect of the clinical investigation must be provided (21 C.F.R. § 812.150(b)(10)); and

10. Any changes in the ACHIEVE clinical protocol or operation of the stent or location for the clinical study would need to be reported to (and sometimes preapproved by) FDA (21 C.F.R. §812.35).

These requirements are intended to keep the FDA apprised of what may be important safety information.

So that it may comply with the foregoing requirements, among others, ACS requests clarification that the Injunction does not prohibit ACS from performing its data collection and reporting obligations, which BSC has acknowledged are not for a "commercial purpose" that would violate the Injunction. (*See* BSC Reply at 12-13.)

## CONCLUSION

The Court should clarify that the Injunction does not prohibit ACS from complying with FDA regulations as the sponsor of the ACHIEVE clinical trials.

Dated: November 1, 2002

Respectfully submitted,

_____
Philip S. Beck
Peter B. Bensinger, Jr.
Rebecca W. Bacon
**BARTLIT BECK HERMAN PALENCHAR & SCOTT**
54 West Hubbard, Suite 300
Chicago, IL 60610
Telephone: (312) 494-4400

Edward A. Mas II
Robert A. Surrette
**MCANDREWS, HELD & MALLOY, LTD.**
500 W. Madison Street, 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8000

ATTORNEYS FOR
ADVANCED CARDIOVASCULAR SYSTEMS, INC.

7

## CERTIFICATE OF SERVICE

    I, Peter B. Bensinger, Jr., an attorney for Advanced Cardiovascular Systems, Inc., do hereby certify that on this 1st day of November 2002, I caused copies of the foregoing ADVANCED CARDIOVASCULAR SYSTEMS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO CLARIFY THE COURT'S OCTOBER 1, 2002, INJUNCTION Order to be served upon counsel for Plaintiff, Cook Inc., and Defendant, Boston Scientific Corporation, by fax and overnight mail or hand delivery at the following addresses:

    Barry Levenstam
    **JENNER & BLOCK**
    One IBM Plaza
    Chicago, IL 60611

    Frederick J. Sperling
    **SCHIFF, HARDIN & WAITE**
    6600 Sears Tower
    Chicago, IL 60606-6473

    Edward Han
    Matthew M. Wolf
    **HOWREY SIMON ARNOLD & WHITE, LLP**
    1299 Pennsylvania Ave., N.W.
    Washington, DC 20004

    Michael K. Lindsey
    Michael Padden
    **HOWREY SIMON ARNOLD & WHITE, LLP**
    321 North Clark Street, Suite 800
    Chicago, IL 60610

_____
Peter B. Bensinger, Jr.
**BARTLIT BECK HERMAN PALENCHAR & SCOTT**
54 West Hubbard Street
Suite 300
Chicago, IL 60610
(312) 494-4400

*See Case File for Exhibits*