Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9479 | **DATE** | 4/15/2004 |
| **CASE TITLE** | Cook Incorporated vs. Boston Scientific Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ___.

(3) ☐ Answer brief to motion due ___. Reply to answer brief due ___.

(4) ☐ Ruling/Hearing on ___ set for ___ at ___.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ set for ___ at ___.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ at ___.

(7) ☐ Trial[set for/re-set for] on ___ at ___.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Plaintiff's motion (Docs 123-1 & 123-2) to dissolve or modify the injunction entered on October 1, 2002, is denied. Ruling set for April 22, 2004 is stricken as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 6 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 16 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 128 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/15/2004 date mailed notice | |
| | SCT courtroom deputy's initials | Date/time received in central Clerk's Office | SCT mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COOK INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 01 C 9479 |
| | ) | |
| BOSTON SCIENTIFIC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motion of Plaintiff Cook Incorporated ("Cook") to dissolve or modify the injunction entered against it on October 1, 2002. For the reasons set forth, the motion is denied; the injunction remains in effect. However, we construe its application as described below.

### BACKGROUND

This case began with a license to exploit an invention for coating vascular stents with a drug called paclitaxel. The licensor, a Canadian corporation named Angiotech, granted worldwide coexclusive licenses ("the Angiotech Agreement") to Cook and Defendant Boston Scientific Corporation ("BSC"). Four years after receiving the license, Cook entered into a series of agreements with Advanced Cardiovascular

Systems, Inc. ("ACS") to produce a stent system called ACHIEVE. Upon learning of the Cook-ACS contract ("the ACS deal"), BSC notified Cook that it believed the relationship violated the terms of the Angiotech Agreement.

Cook then filed the instant suit, seeking declaratory judgment that they had not breached the Angiotech Agreement. BSC responded with a counterclaim for breach of contract.[1] The parties each moved for summary judgment on the issue of breach, and we granted judgment in favor of BSC. Thereafter, BSC sought a permanent injunction, which was entered on October 1, 2002. The injunction provided that:

> 1. No person or entity shall render any performance under or attempt to enforce the ACS deal, which consists of agreements dated August 16, 2001 between Cook, Inc. and Advanced Cardiovascular Systems, Inc., and
> 2. Neither Cook, Inc. nor its affiliates shall directly or indirectly sell or transfer paclitaxel-coated stents to another party, or distribute paclitaxel-coated stents through another party in a manner inconsistent with the Angiotech agreement dated July 9, 1997, and
> 3. No information, data or technology generated or gathered in connection with the ACS deal shall be used for any commercial purpose, including the purpose of obtaining regulatory approval to sell paclitaxel-coated stents in the United States or elsewhere. Notwithstanding the foregoing, physicians may use such information, data or technoloy [sic] to provide medical care that they deem reasonable to patients who, as of the date of this order, were enrolled in clinical studies conducted in connection with the ACS deal, and

---

[1] Both the complaint and the counterclaim contained counts other than those mentioned here, but as they have no effect on the instant motion, they are not included in our discussion.

4. The court shall retain jurisdiction over any dispute regarding compliance with this order or Cook's compliance with the Angiotech agreement.

Cook appealed both the grant of summary judgment to BSC and the entry of the above injunction. The Seventh Circuit affirmed our decision as well as the majority of the injunction. Cook Inc. v. Boston Scientific Corp., 333 F.3d 737 (7th Cir. 2003). However, the court noted that there was no legal harm to BSC in allowing Cook to seek regulatory approval of the ACHIEVE product, because the injunction would prevent any sale of FDA-approved ACHIEVE stents. Id. to 744. Placing the absence of harm to BSC against the interest of third parties who could be affected by Cook's inability to pursue FDA approval, the Seventh Circuit concluded it was necessary to modify ¶ 3 to eliminate the phrase "including the purpose of obtaining regulatory approval to sell paclitaxel-coated stents in the United States or elsewhere." Id.

In late 2003, BSC received approval from an FDA advisory panel for the stent system it has produced under the Angiotech Agreement, known by the brand name TAXUS. Shortly thereafter, BSC publicized its belief that final approval was imminent, precipitating Cook's filing of the instant motion. Cook asserted that this turn of events necessitated either full dissolution of the injunction or, in the alternative, deletion of ¶ 3. During the pendency of the briefing, BSC received final FDA approval of TAXUS.

## LEGAL STANDARD

Cook bases its motion on Fed. R. Civ. Proc. 60(b)(5), which provides that a court may relieve a party from a final judgment, order, or proceeding if "it is no longer equitable that the judgment should have prospective application." A party moving for relief from an injunction under this rule bears the initial burden of establishing a significant change in factual or legal circumstances warranting revision or dissolution of the injunction. See Rufo v. Inmates of Suffolk Cty. Jail, 502 U.S. 387, 383, 112 S. Ct. 748, 760 (1992). If the movant is successful, the court must then consider whether the dissolution or modification is "suitably tailored to the changed circumstances." See id. Although Rufo arose in the context of a consent decree entered in an institutional reform proceeding, its standard applies to other types of equitable cases, including permanent injunctions. Protectoseal Co. v. Barancik, 23 F.3d 1184, 1187 (7th Cir. 1994); In re Hendrix, 986 F.2d 195, 198 (7th Cir. 1993). With these principles in mind, we turn to the motion at hand.

## DISCUSSION

According to Cook's briefs, the motivation behind its motion is a hypothetical situation, namely production and sale of a paclitaxel-eluting stent system it wishes to develop in accordance with the terms of the Angiotech Agreement (rather than in spite of it, as was the ACS deal). Cook fears that the ban on use of data or information for

-4-

any commercial purpose could be construed to disallow sale of the hypothetical stent because of applicable FDA regulations, which require an application for FDA approval to include

> [a]n identification, discussion, and analysis of any other data, information, or report relevant to an evaluation of the safety and effectiveness of the device known to or that should reasonably be known to the applicant from any source, foreign or domestic, including information derived from investigations other than those proposed in the application and from commercial marketing experience.

21 C.F.R. § 814.20(b)(8)(ii). Cook contends that this rule obligates it to submit data from studies that ACS conducted even if the Cook-manufactured stent product under consideration is not ACHIEVE. Assuming that the FDA ultimately approves the new product, Cook is concerned that its later sale of the same will violate ¶ 3 because the ACS data will have been used, strictly speaking, for the commercial purpose of enabling sale of the later stent system. Cook contends that it cannot devote its time and resources to the development process while uncertainty remains with respect to the injunction's reach. As such, they move to dissolve the injunction entirely or, in the alternative, to delete ¶ 3.

In support of their argument that relief is warranted under Rule 60(b)(5), Cook argues that several changes have occurred in the factual circumstances since entry of the injunction. First, they assert that the goal of the injunction was to prevent them

from bringing a paclitaxel-coated stent to market in advance of BSC. As a result, the FDA's approval of TAXUS indicates the injunction has served its purpose. Relatedly, Cook next argues that, in light of the approval, BSC no longer can assert legally cognizable harm stemming from the conduct described in the injunction. Third, and also relatedly, Cook states that the clinical tests of ACHIEVE showed insufficient performance in terms of recurrence of stenosis in diseased vessels. This poor showing means that FDA approval of its products is further away than it had previously estimated. Fourth, Cook points to the public interest in having its stent product on the market. Finally, Cook highlights language from the Seventh Circuit opinion regarding the portion of the ACS deal that included ACS in the approval process for ACHIEVE.

The first three points depend on Cook's argument that the purpose of the injunction was to allow BSC to be the first to obtain FDA approval of and to market its paclitaxel stent system. It is true that when an injunction has fulfilled the purpose for which it was entered, a court can and should consider its dissolution. See, e.g., Stewart v. General Motors Corp., 756 F.2d 1285, 1293 (7th Cir. 1985). However, Cook's narrow characterization of the rationale behind the injunction in this case misses the mark. The injunction was not entered solely to hold Cook back long enough to allow BSC to begin selling TAXUS. This is demonstrated both by the content of the injunction and by the Seventh Circuit's recognition that Cook might have obtained

-6-

approval for its product before BSC even with the injunction in place. Cook, 333 F.3d at 744. Rather, the purpose of the injunction was to prevent Cook from using the fruits of the ACS deal to provide it with an advantage, even a small or indirect one, over BCS that it could not have achieved without its bogus arrangement. As the language of the injunction makes clear, the potential unfair benefits to Cook extend beyond just beating BCS to market; the injunction covers any commercial use Cook can devise. The fact that BCS is now permitted to sell its product thus has little impact on whether the injunction has served its overall purpose. Thus, these arguments do not support modification or dissolution of the injunction.

The fourth basis Cook advances, the public interest, is hardly a "changed circumstance." The public interest in having drug-eluting stents available for use in medical treatment has been present from the outset of this case; there is nothing to indicate that it has grown to such an extent that it warrants a revision of the injunction. In fact, the weight of this factor in our overall consideration is arguably reduced by the approval of TAXUS and CYPHER, Johnson & Johnson's stent product. Although Cook's point that the public has an interest in the benefits afforded by competition among many products is well taken, certainly that interest is not as great as the complete lack of any product of this type as was the case at the time the injunction

began. Accordingly, this basis does not constitute a shift in factual circumstances that would satisfy Cook's initial burden under Rufo.

That leaves Cook's final contention, which focuses on the impact of a statement made in the appellate opinion—namely the phrase "Cook is probably right." Cook, 333 F.3d at 743. Cook seizes on this passage and insists that it means that the Seventh Circuit did not interpret the ACS deal as violating the provisions of the Angiotech Agreement pertaining to Cook's responsibility to obtain regulatory approval for any product its developed. Thus, Cook insists, the injunction must go (or at least ¶ 3). Contrary to Cook's gloss, what the opinion said Cook was "probably right" about was that they retained ultimate responsibility for obtaining regulatory approval and that Angiotech didn't particularly care who shouldered the final burden in dealing with the FDA. The opinion did not say, nor can it be read to say, that Cook was right, apparently in the moral as well as the legal sense, in farming out the lion's share of gaining FDA approval to ACS. This nuance well illustrates the danger of quoting facially favorable language out of context, and selectively at that. See, e.g., Monee Nursery & Landscaping Co. v. Int'l Union of Operating Eng'rs., Local 150, 348 F.3d 671, 677 n.4 (7th Cir. 2003); Teamsters Local No. 579 v. B&M Transit, Inc., 882 F.2d 274, 280 (7th Cir. 1989). Moreover, if one reads the entire paragraph, the final sentence definitively rebuts Cook's position by stating that the ACS deal meant that

"ACS did everything except the coating to bring the paclitaxel to market." 333 F.3d at 743. It does not say, as it would have to if Cook were correct in its interpretation, that ACS did everything except the coating and getting the FDA to approve of the product to bring the paclitaxel to market. This argument disintegrates under scrutiny, and it provides no basis whatsoever for tinkering with the substance of the injunction. In short, Cook has not carried its burden of showing that circumstances have changed to such a degree that relief is warranted under Rule 60(b)(5).

That being said, Cook is not back to square one. As described above, what Cook claims to seek is assurance that its labors to develop a paclitaxel-eluting stent in harmony with the terms of the Angiotech Agreement will not be undone by a broad reading of ¶ 3 of the injunction. Cook understandably does not want to devote a great deal of time, money, and research resources to an effort that is doomed from the beginning. Looking at the wording of the injunction in a vacuum, we can see Cook's point. However, the injunction does not exist in a vacuum, and its language is properly read in conjunction with the removal of the phrase "including the purpose of obtaining regulatory approval to sell paclitaxel-coated stents in the United States or elsewhere." Due recognition of the totality of events directly contradicts the idea that "any commercial purpose" would include the undertaking Cook suggests. As we construe

the injunction,[2] the proposed endeavor is not with the activities forbidden therein. To comply with FDA regulations is a legal obligation, not an opportunity to capitalize on an ill-gotten upper hand such that the injunction's provisions would be triggered. If we were to interpret the injunction in the manner that Cook fears, we would prevent them from ever producing a stent system that employed the Angiotech technology and thus undo the Angiotech Agreement entirely with respect to Cook. This goes beyond any intended or permissible reach of the equitable relief awarded in this case. In short, the injunction already in place provides no obstacle to Cook's development of a paclitaxel-eluting stent system without using anything generated in connection with the ACS deal except in complying with FDA's requirement of full disclosure. We strongly emphasize, however, that our ruling is limited solely to the scenario Cook has specified

---

[2] Although it is axiomatic that a federal court ordinarily cannot issue advisory opinions because of the absence of a case or controversy as demanded by Article III of the Constitution, the present posture of this matter allows a minor departure from this generally applicable rule. As the Seventh Circuit stated in In re Hendrix,

> a person subject to an injunction always has the right to ask the court that is administering it whether it applies to conduct in which the person proposes to engage. If this looks like a request for an "advisory opinion," it is one that even a federal court can grant, in order to prevent unwitting contempts.

986 F.2d 195, 200 (7th Cir. 1993)

in its submission on this motion. Any other situation is not before us and we offer no opinion of the injunction's reach beyond that stated.

## CONCLUSION

Based on the foregoing analysis, the motion to dissolve or modify the injunction entered on October 1, 2002, is denied.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: APR 15 2004